BRASH v. CITY OF ST. LOUIS, Appellant.

In Banc, March 26, 1901.

1. **Negligence:** ACT OF GOD: CONCURRING CAUSE. Where the injury to property is caused by the concurrence of the act of God and the negligence of defendant, the plaintiff should recover for the resulting damages.

2. ———: ———: ———: SEWER. The brick arch of the sewer for 150 feet was left exposed, and for a long time a crack one half inch wide extended along the top of the arch for twenty feet, and one row of brick along the under side of the arch where the sewer burst, had fallen out, and so remained for months. The rainfall preceding the bursting of the arch was 1.32 inches in an hour, and the expert testified that such a rainfall would occur about once a year, and the standard of capacity for sewers was that it should be capable of receiving a one inch rainfall. *Held,* that if such unusual rainfall would have burst the sewer anyhow, notwithstanding its defects, then the city was not responsible for the damage done to plaintiff's house; on the other hand, if the bursting of the sewer was caused by the defects therein and the concurring unusual rainfall, the city is liable notwithstanding the unusual rainfall may have been one of the causes of the bursting of the sewer. If the defects therein and the unusual rainfall were concurring causes, the city is liable for the resulting injury to private property.

Appeal from St. Louis City Circuit Court.—*Hon. L. B. Valliant,* Judge.

AFFIRMED.

*B. Schnurmacher* and *Chas. Claflin Allen* for appellant.

(1) Instructions 1 and 2, given for plaintiff, were erroneous in authorizing the jury to find against defendant, although the sewer in question burst in consequence of an extraordinary and unusual rainfall. The city was not bound to provide against

Vol 161 mo—28

a danger of this character; its obligation was merely to maintain a sewer of sufficient capacity and strength to withstand the force and power of ordinary storms. Flori v. St. Louis, 69 Mo. 341; Turner v. Haar, 114 Mo. 335. (2) Instruction 1 is not consistent within itself. (a) It declares to the jury that the city is not bound to construct its sewers so as to withstand extraordinary rainfalls, or an act of God, and immediately adds, "yet it is the duty of the city to guard, as far as reasonable foresight and prudence can, against dangers from extraordinary rainfalls." (b) The same instruction, while charging that the city's duty is to construct and maintain its sewers in accordance with ordinary and usual methods, yet instructs the jury to find for plaintiff "notwithstanding the unusual rainfall" if the city failed to perform "its full duty" in the construction, repair and covering of the sewer. (3) Defendant's instruction 6, to the effect that the verdict should be for defendant if the jury found from the evidence that the bursting of the sewer was caused by a storm of unusual force and violence, should have been given. (4) The instructions defining negligence should have been given. The term was used in the instructions and should have been defined; particularly in view of the vagueness and indefiniteness and uncertainty of plaintiff's instruction 1, which left the jury utterly at sea as to what constituted negligence in law.

*Clinton Rowell* and *J. H. Zumbalen* for respondent.

(1) Although the sewer may have burst in consequence of an extraordinary and unprecedented rain storm, nevertheless the defendant is liable, if its negligence contributed to and became an active agency with the act of God in producing the damage. Shearman & Redfield on Negligence (5 Ed.), sec. 39; Haney v. City of Kansas, 94 Mo. 334; Woods v. City of Kan-

Brash v. City of St. Louis.

-sas, 58 Mo. App. 272; Am. Brew. Co. v. Talbot, 141 Mo. 680; Vanderslice v. Philadelphia, 103 Pa. St. 102.   (2) The plaintiff's instructions are not open to the objections made against them, and correctly apply the foregoing rule to the particular acts and omissions complained of.   (3) (a) Defendant's sixth instruction was properly refused, because it ignored entirely the question of defendant's negligence as an active agency with the act of God in producing the injury, and because the definition was misleading.   (b) Defendant's seventh instruction, defining negligence, was properly refused, because the instructions given sufficiently defined the degree of care.   Sweeney v. Railroad, 150 Mo. 385.   (4) (a) The evidence fails to show that the rainfall in question was an extraordinary or unprecedented one; but does show affirmatively that it was such as ordinary care and prudence should have anticipated.   Powers v. Council Bluffs, 50 Iowa 197; Mayor of New York v. Bailey, 2 Denio 433.   (b) The verdict and judgment are for the right party, and should therefore be affirmed.   R. S. 1899, sec. 865; Fitzgerald v. Barker, 96 Mo. 661; McFarland v. Heim, 127 Mo. 327; Greer v. Lafayette Co. Bank, 128 Mo. 559.

BRACE, J.—This is an appeal from a judgment of the St. Louis City Circuit Court, in favor of the plaintiff, for the sum of $650 for damages to her premises and personal property, caused by the bursting of Rocky Branch sewer, and the overflow of water therefrom, on the twenty-seventh of May, 1896.

The errors assigned for reversal are the giving of instructions numbered 1, 2 and 3 for the plaintiff, and the refusal to give defendant's instructions numbered 6 and 7.

The defense was that the bursting of the sewer was caused by the act of God, manifested in an "unusual and unexpected rainfall and flow of water."

The evidence tended to prove that the front of plaintiff's

premises are level with Palm street; that her lot slopes to the rear, where it is three or four feet below the grade of Palm street; that the sewer back of her premises, and for some distance eastward, was built upon still lower ground, on a twenty-foot right of way. The sewer at this point for a distance of one hundred and fifty feet was built almost wholly above the surface of the ground, three feet of the side walls and the entire brick arch, which is five feet high, being visible and exposed. This sewer was built through this block in 1872 or 1873, and at that time about one foot of earth was put on top of it. In the course of a few years this ballasting was washed away, and it was not replaced until after the accident; and for years prior to the accident about one hundred and fifty feet in length of the sewer was exposed to view and to the elements as above stated. For several years prior to the accident a crack about one-half inch wide and twenty feet in length existed in the arch of the sewer where it was thus exposed, and a little west of plaintiff's premises. This crack extended through the arch, so that the water running in the sewer could be seen and heard through it.

The evidence further tended to show that the Rocky Branch sewer was built along the course of a natural channel of drainage, Rocky Branch creek; that the ground in said block upon which it was built was low and marshy; that when the sewer was built, old fence planks were laid under the timbers upon which the walls rest; that at the time of the accident the walls had sunk and settled, and that one row of bricks had fallen out of the center of the under side of the arch at or near the place where it broke. That the sewer broke at the point where it was uncovered and exposed, and just where the crack in the arch was shown to have been. The whole arch for a distance of seventy to one hundred feet caved in, or was broken up. That sewers are built of a capacity to carry off an inch of water per hour, delivered to the sewer, for each acre of territory drained;

that if there is a rainfall of one inch an hour, not all this would find its way to the sewer, and a smaller part thereof would be delivered to the sewer in a sparsely settled section where many streets are unpaved, such as this was, than in a closely built-up district. Just west of the place where the sewer broke there was fifteen feet of earth on top of it, and if the sewer had been covered to grade at the point where it broke, there would have been twelve to fifteen feet of earth on the arch. That sewers were designed to be covered with earth, which serves to strengthen them, and that in the city of St. Louis sewers are not built nearer the surface of the ground than eleven feet, and if there had been ten feet of earth upon the sewer at this point it would, probably, not have burst.

The evidence further tended to prove that the sewer burst between five and six o'clock p. m. of the twenty-seventh of May, 1896, during the prevalence of the cyclone of that date in South St. Louis. That in said city at the Custom House, Eighth and Olive Streets, some two miles nearer the path of the cyclone than the place in question, the rainfall from five to six o'clock p. m. was 1.32 inches.

Dr. Frankenfield, the official of the weather bureau, testified that: "We do not often have a rainfall of 1.32 inches an hour. We do have such an amount of rainfall; it is not often, but it does occur. . . . . I would call it unusual to have more than an inch of rainfall in an hour. It is unusual, but not unprecedented. I have no idea how often that has occurred, I could come within reasonable limits I suppose, but I do not know exactly. My best impression is that is about once a year, I should say." The evidence further tended to prove that the rainfall in the Rocky Branch sewer district was not as great as in some other portions of the city.

The general doctrine on the question in issue on the instructions is thus stated in 1 Shearman & Redfield on Negli-

gence (5 Ed.), sec. 39: "It is universally agreed that if the damage is caused by the concurring force of the defendant's negligence and some other force for which he is not responsible, including 'the act of God,' or superhuman force intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that if the negligence of the defendant concurs with the other cause of the injury in point of time and place, or otherwise so directly contributes to the plaintiff's damage, that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated the interference of the superior force, which concurring with his own negligence produced the damage. But if the superior force would have produced the same damage whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." And this is the prevailing doctrine in this State. [Wolf v. Am. Express Co., 43 Mo. 421; Read v. St. Louis, K. C. & N. R. R. Co., 60 Mo. 199; Pruitt v. Han. & St. Joe R. R. Co., 62 Mo. 527; Davis v. Wabash, St. L. & Pac. Ry. Co., 89 Mo. 340; Haney v. City of Kansas, 94 Mo. 334; Am. Brew. Ass'n v. Talbot, 141 Mo. 674.] There is nothing in the rulings in Flori v. City of St. Louis, 69 Mo. 341, or Turner v. Haar, 114 Mo. 335, inconsistent with this doctrine.

The plaintiff's instructions complained of are as follows:

"1. The court instructs the jury that it is the duty of the city to construct and maintain its sewers in such a manner as to make them safe against danger of breaking from any rainfall which is reasonably to be expected, and, while the city is not bound to construct its sewers so that they will withstand extraordinary rainfalls or any act of God, yet it is the duty of the city to guard, as far as reasonable foresight and prudence can, against danger from extraordinary rainfalls by constructing

and maintaining its sewers in accordance with the ordinary and usual methods adopted for the proper and safe construction and maintenance of sewers. Therefore, even if you find from the evidence that the break in the sewer shown in evidence resulted from an extraordinary rainfall, yet if you further find that the city failed to properly construct the sewer, or failed to keep it in proper repair, or failed to cover the sewer with earth, and that the failure of the city to so construct, repair or cover the sewer with earth, contributed to the breaking of the sewer; that is to say, if you find that notwithstanding the unusual rainfall, the break would not have occurred if the city had performed its full duty in the construction, repair and covering of the sewer, then your verdict will be for the plaintiff, if you find that she was damaged by the breaking of the sewer.

"2. The court instructs the jury that if they believe from the evidence that the top arch of the sewer had sprung a crack at the point where it burst, and that the defendant had knowledge of said condition, or by the exercise of reasonable care and prudence could have discovered said condition in time to have repaired said defects before the break occurred, and if you further find from the evidence that the break in said sewer was occasioned by said defects, then your verdict must be for the plaintiff, if you find that she was damaged by the breaking of the sewer, even though you may further find that the break occurred during a rain storm of unusual severity.

"3. The court instructs the jury that if they believe from the evidence that the top arch of the sewer was entirely exposed and unprotected by any ballasting at the point where it burst and that it had been allowed to remain in said condition for years by the defendant, and that the sewer burst in consequence of the top arch thereof being exposed and unballasted, and that plaintiff was damaged by the bursting of the sewer, then your verdict must be for the plaintiff."

The defendant's instructions, the refusal of which is complained of, are as follows:

"6.    The jury are instructed that if they believe from the evidence that the bursting of the sewer in the rear of the premises of plaintiff was caused by a storm of unusual force and violence, they will find a verdict in favor of the defendant.

"7.    The term 'negligence' as used in these instructions, means the want of ordinary care, and the term 'ordinary care' means such care as a person of ordinary prudence would have exercised under the same or similar circumstances."

It may be conceded that there was evidence upon which the jury might have found that the rainfall in this sewer district in the hour between five and six o'clock p. m. of the twenty-seventh of May, 1896, was of such an unusual character as could not have been reasonably anticipated and provided against, and applying the doctrine stated to the case, if such unusual rainfall would have burst the sewer anyhow, notwithstanding its defects, then the defendant is not liable, and so the jury were in effect told by instruction numbered 2 given for the defendant.    On the other hand, if the bursting of the sewer was caused by the defects mentioned in plaintiff's instructions numbered 2 and 3, it could not have been caused solely by the unusual rainfall, and the defendant is liable as the jury were told in those instructions; or, if the bursting of the sewer was caused by those defects commingled, and concurring with the unusual rainfall, and flow of water, still the defendant is liable, as they were told in plaintiff's instruction numbered 1.    Taking these instructions together, we think the case was fairly presented to the jury.    Although the unusual rainfall may have been one of the causes of the bursting of the sewer, yet if the defects in the sewer were also concurring causes, producing that effect, the defendant is nevertheless liable, hence the court committed no error in refusing defendant's instruction numbered 6.    Defend-

ant's instruction numbered 7 defining negligence, was fully covered by its instruction numbered 2, and its refusal affords no sufficient ground for reversal. The judgment is for the right party, ought to be affirmed, and it is so ordered.

All concur, except *Marshall* and *Valliant, JJ.,* not sitting.