## J. W. BOOKER, Respondent, v. SOUTHWEST MISSOURI RAILROAD COMPANY, Appellant.

**Springfield Court of Appeals, May 2, 1910.**

1. **APPELLATE PRACTICE: Motion for New Trial: Admission of Evidence: Conduct of Attorney.** Objections to the admission of evidence and to the arguments or conduct of counsel must be preserved by calling the attention of the trial court thereto in the motion for a new trial, otherwise they cannot be considered by the appellate court.

2. **PRACTICE: Demurrer to Evidence: Duty of Court.** In passing upon a demurrer to the evidence, the court is required to make every inference of fact in favor of the party offering the evidence which a jury might with propriety have inferred in his favor; and if, when viewed in this light, it is sufficient to support a verdict in his favor, the demurrer should be overruled.

144 App—18

3. **STREET RAILWAYS: Negligence: Personal Injuries: Injury to Bystander by Falling Wires.** Plaintiff was standing near the street railway tracks. As a car approached, the trolley pole jumped and slipped from the wire, caught and broke the guy wire and also the trolley wire, and the system of suspended wires fell to the street, one of them, a live wire, striking the plaintiff across the face and causing injury. The evidence is examined and *held* sufficient to entitle the plaintiff to go to the jury on the question of defendant's negligence in using an insufficient, weak and worn trolley wire, and that the trial court was justified in overruling the demurrer to plaintiff's evidence.

4. **ELECTRICITY: Insulation: Presumption.** When an injury is caused by coming in contact with a live wire, it is conclusively presumed that the insulation of the wire is defective.

5. **RES IPSA LOQUITUR: Negligence: Electricity: Injury from Falling Wires.** Where it is shown that a street railway company uses electric wires above its tracks on the public streets and the wires are under the control and management of the company, and one of these live wires breaks and falls to the street and injures a bystander, a prima facie case of negligence is made out, and the burden is then cast upon the company to show that the wire was on the street without fault on the part of the company, its agents or servants.

6. ————: ————: ————. Under the pleadings, evidence and instructions in this case, where a plaintiff claimed to have been injured by a falling trolley wire, it is held that the doctrine of *res ipsa loquitur* is not invoked.

7. **NEGLIGENCE: Elements of Actionable Negligence.** It is elementary law that in order to constitute actionable negligence three elements are essential to its existence: (1) The existence of a duty on the part of defendant to protect the plaintiff from injury; (2) a failure of the defendant to perform that duty; (3) the injury to plaintiff from such failure of the defendant.

8. ————: **Ordinary Care Defined.** Ordinary care is commonly defined as such care as ought reasonably to be expected of an ordinarily prudent person in the same situation as the person whose conduct is in question. Under this definition, negligence is a relative term, and what would be negligence under one set of circumstances would not be under another, and the care required would be proportionate to the danger and would increase with the increase of the risk.

9. **ELECTRICITY: Negligence: Utmost Degree of Care Required in Using Electricity: Instructions.** A departure from the standard definition of negligence has been made in this State as to the care required in handling, using and transmitting electricity. The rule established is that the utmost degree of care should be required in such cases, and that the utmost care should be used in keeping the wires insulated. Instructions declaring this rule are approved.

10. **NEGLIGENCE: Falling Wires: Act of God: Instructions.** Plaintiff was injured by the falling of a trolley wire. One of the defenses was that the wire broke because of the heavy and unusual sleet thereon. The evidence was conflicting as to whether the sleet was other than could have been reasonably anticipated. Instructions given on both sides of this question are examined and approved.

11. ————: **Act of God: Concurring Negligence of Defendant.** If defendant's negligence concurs with the act of God in point of time and place, or otherwise so directly contributes to plaintiff's damage that it is reasonably certain that the other cause would not have sufficed to have produced the injury, then the defendant is liable, notwithstanding he may never have anticipated the intervention of superhuman force.

12. **INSTRUCTIONS: Pleading: Damages: Personal Injury: Recovery for Expense of Medical Services.** An allegation in a petition that plaintiff had been "put to a great expense" for medical services, medicines, *et cetera*, on account of personal injury justifies an instruction allowing a recovery for these expenses whether they had been paid for or not.

13. ————: **Duty of Party to Present Instructions.** Section 748, Revised Statutes 1899, authorizes either party in a civil suit to move the court to give instructions on any point of law arising in the case, and it may be said generally that it is not the duty of the court, but of the appellant, to prepare and present proper instructions.

14. **EXCESSIVE VERDICT: Personal Injuries.** In a case where plaintiff was injured by a falling trolley wire, evidence examined and verdict held not excessive.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1) Instruction number 5, given on behalf of plaintiff, should have been refused, and instruction C, asked by defendant, given, as all the testimony on the question shows the sleet storm to have been extraordinary and unusual, and it is in conflict with instruction number 10, given for defendant. Turner v. Harr, 114 Mo. 346; McPherson v. Railroad, 97 Mo. 253; Stoher v. Railroad, 105 Mo. 195; Flori v. Railroad, 69 Mo. 341. (2) The petition alleges plaintiff has "been put to great expense for medical attendance and nurses and for the purchase of medicine and drugs, to-wit: in the sum of four hundred dollars" (not that he has become liable for that amount). There is no evidence that plaintiff has paid out anything on this account, therefore not entitled to recover for it under the petition. Muth, Ex., v. Railroad, 87 Mo. App. 433; Nelson v. Railroad, 113 Mo. App. 662; Howard v. Railroad, 110 Mo. App. 582; Stanley v. Railroad, 112 Mo. App. 608; Robertson v. Railroad, 152 Mo. 391; Rhodes v. Nevada, 47 Mo. App. 500; Madden v. Railroad, 50 Mo. App. 682. (3) The plaintiff in his petition having plead specific acts of negligence on the part of the defendant causing the accident and injury, the burden was on plaintiff to prove the specific negligence alleged and the doctrine of *res ipsa loquitur* does not in any way apply, and the court erred in refusing defendant's instructions "B". Hamilton v. Railroad, 114 Mo. 509; Bunyan v. Railroad, 127 Mo. 19; Hite v. Railroad, 130 Mo. 136; Bartley v. Railroad, 148 Mo. 139; Gayle v. Car Co., 177 Mo. 450; Cooper v. Realty Co., 123 S. W. 853; Kirkpatrick v. Railroad, 211 Mo. 83; McCrary v. Railroad, 109 Mo. App. 569; Ratliff Bros. v. Railroad, 118 Mo. 653; Carvin v. St. Louis, 151 Mo. 345; Gannon v. Gas Co., 145 Mo. 534; Warner v. Railroad, 178 Mo. 133; Schultz v. Railroad, 36 Mo. 32. (4) Defendant was only bound to use ordinary care

to prevent accident by act of God, to-wit: extraordinary sleet storm. Grier v. Railroad, 108 Mo. App. 574; Commission Co. v. Railroad, 113 Mo. App. 544; Woolsey-Stahl Co. v. Railroad, 113 Mo. App. 651; Lamar v. Railroad, 117 Mo. App. 458; Lightfoot v. Railroad, 126 Mo. App. 532.

*R. A. Mooneyham, R. M. Sheppard* and *Hugh Dabbs* for respondent.

(1) A complete prima-facie case of negligence was made out, and the burden was cast upon the defendant to show that this live wire was on the street through no fault of its servants or agents. Harrison v. Light Co., 195 Mo. 623; Beverly v. Light Co., 130 Mo. App. 593; Brown v. Light Co., 137 Mo. App. 718; Gannon v. Gas Co., 145 Mo. 502; McLaughlin v. Light Co., 100 Ky. 173. (2) The instructions given in this case correctly declare the law. Reed v. Railroad, 60 Mo. 199; Pruitt v. Railroad, 62 Mo. 527; Stanley v. Railroad, 121 Mo. App. 545; Commission Co. v. Railroad, 113 Mo. App. 544; Strother v. Railroad, 105 Mo. 192; Grier v. Railroad, 108 Mo. App. 565; Jones v. Railroad, 108 Mo. 546. (3) Plaintiff was entitled to go to the jury on the specific allegations of negligence. Von Trebra v. Gas Light Co., 209 Mo. 652; Ryan v. Railroad, 190 Mo. 621; Geiseman v. Electric Co., 173 Mo. 673; Brown v. Electric Co., 137 Mo. App. 730; Joyce on Electric Law, 607; Girarardi v. Imp. Co., 107 Cal. 124; Haynes v. Gas Co., 19 S. E. 345. (4) The doctrine of concurring negligence is firmly rooted in the jurisprudence of this State. Harrison v. Light Co., 195 Mo. 623; Newcomb v. Railroad, 169 Mo. 422; Brash v. City, 161 Mo. 437. The objection of the appellant that the trolley wire was not the approximate cause of plaintiff's injury is certainly without foundation. Joyce on Electric Law, secs. 607-609; 31 L. R. A., 572; 51 Am. St. Rep. 464.

STATEMENT.—This was an action for damages for personal injuries. . Defendant owned and operated an electric railroad by the overhead trolley system in Carthage, Missouri. Its car tracks from the south come to the public square on Main street. Just before reaching Fourth street on the south side of the square, the tracks divide, one going north on Main street and the other turning east on Fourth. There was a switch in the tracks about twenty feet south of Fourth street with a trolley wire overhead.

On the night of November 19, 1906, there was a sleet storm. In operating the road, by reason of the sleet, the wheel had been taken off the trolley pole and a trolley pin inserted to knock the sleet off the wire and thereby obtain the current to run the car. At the corner of Fourth and Main streets, there were a number of guy or span wires suspended to hold the trolley wire in proper position above the tracks. In addition, there is, on one side of the track, stretched on the poles, a feed wire, which is connected with the trolley wire at intervals, its use being to equalize the electric current, and also to furnish current past any accidental break in the trolley wire. The trolley cars were operated by communicating the electric current from the trolley wire to the cars by means of bringing the end of the trolley pole in contact with the trolley wire. The trolley pole is located on the top of the car and has a spring underneath between its base and the top of the car, strong enough to hold it up firmly against the trolley wire. When the wheel on the end of the trolley pole jumps or slips from the wire, this spring throws the pole up nearly perpendicular and causes it to hit against the guy wires when the car is running.

On the morning of November 20, 1906, plaintiff and other persons were standing near the trolley car tracks on the east side of Main street, waiting to take the 6:10 car. When the car was approaching, the trolley pole jumped and slipped from the wire, caught and

broke the guy wire and also the trolley wire, and the system of suspended wires fell to the street, striking the plaintiff . across the face, causing injuries—as is claimed—which rendered him a mental and physical wreck.

The plaintiff's evidence tends to show that the exposed end of the broken and live trolley wire came in contact with his person and inflicted the injuries. The extent of those injuries is disputed by the defendant. Plaintiff's evidence also tends to show that the trolley wire at the time it was put up was inferior in size in comparison to the size of wires commonly used as trolley wires; that it had been used some ten or eleven years at that place; that it had become worn by long continued use, and that its tensile strength had been greatly weakened and impaired so as to reduce the size of the wire to about one-half its original size and strength, and that it was thereby impaired to such a degree as to be weakened, defective and inadequate for the purpose for which it was used. There is a conflict in the evidence as to whether the injuries were caused by the trolley wire or a guy wire and whether either of them were live wires at the time of contact with plaintiff's person.

The evidence for the defendant tended to show that there had been an unprecedented sleet storm the night before, and that the wires on the morning of the accident were heavily coated with sleet, rendering it difficult to get the wheel on the trolley pole in contact with the wire so as to run the car; that when a trolley wire is in such condition, it breaks more easily; that it took but little sleet to increase the weight and strain on the wire and that it would therefore increase the risk of breakage; that trolley poles frequently jump from the trolley wire, under any circumstances, and that there is no means known to satisfactorily prevent it; that in times of sleet and ice, more care is required to keep the pole on the wire; that on the morning of

the accident, it was hard to run fast on account of the ice on the trolley wheel and on the trolley wire, and the company had put in a trolley pin as it would better cut the ice, and that this is the usual way of doing in case of sleet; that the wire in use was a proper one to sustain the strain that was required for operating the cars. The evidence was conflicting in regard to the extent of the sleet storm. Respondent introduced evidence tending to show that it was not worse than commonly experienced in that vicinity.

The plaintiff obtained a verdict for the sum of $9500, entered a remittitur of $2000 and the judgment was entered in his favor for $7500, from which the defendant has appealed.

The negligence complained of by respondent is stated in the petition as follows:

"That at the point where the injuries complained of occurred, said trolley wire had become and was then and there so worn by long and continued use by defendant that its tensile strength was greatly weakened and impaired, and that the defendant negligently suffered and permitted said wire, at the point of said accident, to become old and worn out by the long continued use to which the same had been put, so that said wire was reduced to about one-half its original size and strength whereby the strength and durability of said wire was impaired at least one-half, so that said trolley wire was too weak, defective, insufficient and inadequate for the purpose of propelling defendant's street cars; that said wire had negligently been maintained by defendant for a long time before the injuries complained of, in said weakened, defective, insufficient and inadequate condition, and that by reason thereof said wire became dangerous and unsafe, and that the defendant knew, or by the exercise of ordinary care could have known, the dangerous, defective, insufficient, weakened and inadequate condition of said wire a sufficient length of time before the injuries complained of, to have remedied

same and averted the accident; that the maintenance of said wire in said condition and position was negligence on the part of the defendant. . . . And as one of the defendant's cars at the time and in possession of and operated by the defendant, came north on Main street and was about to enter the public square, said trolley wire suddenly and without warning parted, or broke in two, at a point near the southwest corner of the public square in said city where said wire passes under what is commonly called the switch bar, and one end of such wire so charged with electricity fell to the street below carrying with it in its said fall said guy wire also charged with electricity, and said wires then and there came in contact with the plaintiff, striking him in the face and about his head with such force and violence as to cut a long, deep, ugly gash," etc.

NIXON, P. J.—I. Appellant contends that respondent's attorney was guilty of misconduct in his opening statement, and was permitted to make an argument of the case tending to prejudice and inflame the minds of the jurors and that he was also guilty of prejudicial conduct during the examination of witnesses. Another objection is that the court allowed improper and incompetent evidence to be introduced by the respondent over the objections of appellant. Also, that the court allowed the witnesses to give their opinions and conclusions, over the appellant's objections. To all of these objections, the unanswerable reply is that they were not saved in appellant's motion for a new trial, and consequently are not before this court for its consideration.

II. The appellant filed a demurrer to the evidence at the conclusion of plaintiff's evidence and another at the conclusion of all the evidence, in which it claimed that there was no substantial evidence to show that the appellant's trolley wire was weak, old, worn, or reduced in size and strength.

It is quite unnecessary to cite authorities to sustain the proposition that a demurrer to the evidence admits every fact to be true which the evidence tends to prove, whether by direct testimony or reasonable deductions drawn therefrom; and that, in passing upon such demurrer, the court is required to make every inference of fact in favor of the party offering the evidence which a jury might with propriety have inferred in his favor; and if, when viewed in this light, it is sufficient to support a verdict in his favor, the demurrer should be overruled. [Von Trebra v. Laclede Gaslight Co., 209 Mo. l. c. 658, 108 S. W. 559; Montgomery v. Mo. Pac. Ry. Co., 181 Mo. l. c. 504, 79 S. W. 930; Buesching v. St. Louis Gaslight Co., 73 Mo. 219; Donohue v. St. L., I. M. & S. Ry. Co., 91 Mo. 357, 2 S. W. 424, 3 S. W. 848; King v. St. L. & S. F. R. Co. (decided at this term); Wilkerson v. St. L. & S. F. R. Co., 124 S. W. 543.]

Respondent's witness, R. W. Garner, testified that he was a telephone engineer, and knew about the construction of the trolley wire that broke, and that it was constructed eleven years before it broke. His testimony continues substantially as follows: "I put up the wire which is known as a 2-0 wire. There are other kinds of wire aside from the 2-0 wire used for that kind of business. There is a 4-0 wire used which is larger, not quite twice as large. I was on the square on the morning of the accident when the wire broke, and saw the trolley wire. I think it was about half its original size, and its tensile strength would be about half of what it was originally." This is not "scintilla evidence;" it is substantial evidence and amply supports the verdict. The demurrer was therefore properly overruled.

III.   Appellant complains of the giving of instruction No. 1 which is as follows:

"If the jury believe from the evidence that on the 20th day of November, 1906, the defendant company

owned, and was then and there and for some time prior thereto, had been operating a street railroad over, along and upon Main street, a public thoroughfare in the city of Carthage, Missouri; that the motive power employed by defendant in operating its railroad and conducting its said business was electricity, and that in conducting said business, and as a part of the equipment of said railroad, defendant had erected and strung upon poles along said street a trolley wire charged with electricity; and if you further find from the evidence that on said day, at a point on Main street near the southwest corner of the public square, the defendant negligently and carelessly permitted the trolley wire mentioned in evidence to become old and worn, to the extent of impairing or weakening the tensile strength thereof, so that said trolley wire was insufficient or inadequate for the use mentioned in evidence; and if the jury further find from the evidence that on the morning of November 20, 1906, by reason of the worn, weakened, defective and insufficient condition of said trolley wire, if you find it was worn, weakened, defective and insufficient, while plaintiff was standing on Main street at or near the southwest corner of the public square in said city, for the purpose of taking defendant's street car to his place of business, said trolley wire so charged with electricity, if you find it was charged with electricity, was negligently and carelessly permitted by the defendant to suddenly break in two at a point on Main street in said city near the southwest corner of the public square where said wire passes under the switch bar, and fall to the street, breaking and carrying with it in its fall the guy wire also charged with electricity, and if you further believe from the evidence that said wires or either of them came in contact with his face with such force and violence as to cut a gash on his upper lip, burning his face, and an electric current was thereby communicated to his head, face or body, and that by reason thereof, plaintiff was thrown upon the street and injured; and if

you further believe from the evidence that defendant knew, or by the exercise of the utmost care of an ordinarily prudent person engaged in the same or similar business, could have known the worn, defective, dangerous and insufficient condition of the trolley wire, if it was worn, defective and insufficient, a sufficient length of time before the injuries.complained of to have remedied the same and averted the accident and failed to do so, and if you further believe from the evidence that the plaintiff in standing or being upon the street at the time and place in question, was exercising ordinary care for his own safety in so doing under the circumstances shown by the evidence, then the plaintiff is entitled to recover."

Objection is made to this instruction because it contains this language, "if said trolley wire so charged with electricity, if you find it was charged with electricity, was negligently and carelessly permitted by the defendant to suddenly break in two." Appellant contends that this language in the instruction was misleading to the jury and authorized the jury to find negligence from the mere breaking of the wire. In other words, that the instruction applies the doctrine of *res ipsa loquitur*.

In the case of Von Trebra v. Laclede Gaslight Company, supra, the suit was brought by the widow for the killing of her husband by reason of coming in contact with an electric wire which at the time carried a high and dangerous voltage of electricity and on which there was no insulation at the point of contact. The court gave this deliverance as the settled law of this State: " . . . it is not necessary for the plaintiff to prove, in order to recover, that the insulation was off the wire, at the point of contact. All the law requires is that it be shown that the defective insulation caused the injury, without fault on his part, and that he was rightfully where he was. It is equally well-settled law in this State, that when injury or death is caused by coming in contact with such wire, it is conclusively presumed that the insulation of the wire was defective."

Negligence has been defined to be a failure of duty; and proof that a live wire carrying a deadly current fell into a public street might well be said to raise the presumption that someone had failed in his duty to the public. When to this was added the fact that the appellant was using this wire for commercial purposes and that it was put above the street for that purpose and was under the control and management of its servants, and broke and fell to the street, these circumstances might well be held to show a complete prima-facie case of negligence, and that under such circumstances, the burden would be cast upon the defendant to show that this live wire was on the street through no fault of its servants and agents. [Harrison v. K. C. El. Light Co., 195 Mo. l. c. 623, 93 S. W. 951; Byerly v. Consolidated Light, Power & Ice Co., 130 Mo. App. 593, 109 S. W. 1065; Brown v. Consolidated Light, Power & Ice Co., 137 Mo. App. 718, 109 S. W. 1032; McLaughlin v. Light Co., 100 Ky. 173.]

But in this case, the petition, the evidence and the instructions do not proceed upon the doctrine of *res ipsa loquitur,* and the objection to the instruction on that account was properly overruled. The instruction, *inter alia,* required that the jury should believe that the appellant negligently and carelessly permitted the trolley wire to become old and worn by long continued use, to the extent of impairing and weakening its tensile strength, so as to become inadequate for its use, and by reason of such defective condition, was negligently permitted by defendant to break. The instruction did not predicate liability on the mere fact of the breaking of the wire.

IV. Further objection is made by appellant to this instruction and to other instructions given in the case for respondent for the reason that they required of the defendant more care than the law requires, and that they contained an erroneous definition of negligence as

applied to this case.  The clauses objected to are as follows:  In the first instruction, "if you further believe from the evidence that the defendant knew, or by the exercise of *the utmost care* of an ordinarily prudent person engaged in the same or similar business, could have known the worn, defective, dangerous and insufficient condition of the trolley wire, . . ."  In instruction No. 2, concerning the liability in case of a sleet storm, "if you find that notwithstanding said sleet, the break would not have occurred, if the defendant company had used *a high degree of care* such as is used by prudent persons engaged in the same or similar business, to maintain its trolley wire in a safe condition and used *the utmost care* to keep the same so, . . ."  In the third instruction, the language used made it the duty of the defendant company, "to exercise *the highest degree of care* usually exercised by prudent persons engaged in the same or similar business to see that the streets at the point where the accident occurred and along which the defendant maintained its overhead trolley  wires were at all times maintained in the same condition as to safety from danger of electricity as they were before its overhead use thereof was begun, so that persons passing along said street, in the exercise of a lawful occupation, in a place where they had a right to be, are not injured thereby."

The appellant claims that there is but one definition of negligence, and that the ordinary care of a prudent person under the same or similar circumstances is the standard of a defendant's liability.  It is elementary law that in  order to constitute actionable negligence, three elements are essential to its existence:  (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury;  (2) a failure of the defendant to perform that duty; and (3) the injury to the plaintiff from such failure of the defendant.  Ordinary care is commonly defined as such care as ought reasonably to be expected  of an ordinarily prudent person in

the same situation as the person whose conduct is in question. [Keown v. St. L. R. Co., 141 Mo. 86, 41 S. W. 926.] Under this definition, negligence is a relative term, and what would be negligence under one set of circumstances would not be in another, and the care required would be proportionate to the danger, and would increase with the increase of the risk. [Gallagher v. City of Tipton, 133 Mo. App. 557, 113 S. W. 674; Hovarka v. St. L. T. Co., 191 Mo. 441, 90 S. W. 1142.] An examination of the instructions shows that they required an extraordinary degree of care of the appellant and not ordinary care.

A departure from the standard definition of negligence has been made in this State as to the care required in handling and transmitting the highly dangerous force of electricity. In the case of Geismann v. Missouri-Edison El. Co., 173 Mo. 654, 73 S. W. 654, the appellant was a lighting corporation engaged in supplying electric lights and power to consumers in the city of St. Louis. The action was brought by the widow in which it was charged that through the negligence and carelessness of the defendant, one of its wires had been permitted to become out of repair and worn off to the extent that the dangerous and deadly electric current passing through the same had become exposed and dangerous to persons required to be thereabout. The question was therein presented as to the degree of care that was required of persons using such dangerous agencies. The court declared that the law imposed upon the defendant the duty of exercising *the utmost care and prudence* to prevent such injury, citing many authorities. After a review of numerous cases, the court makes this declaration of the law, summarily stating its conclusions: "It follows from these authorities that it was the defendant's duty, in the first place, to use every protection which was reasonably accessible to insulate its wires at the point of contact and injury, and to use the utmost care to keep them so, and the fact of the death of Geis-

mann is conclusive proof of the defect of the insulation and negligence of the defendant."

Following the line of the Geismann case, in the case of Winkelman v. K. C. El. Light Co., 110 Mo. App. 184, 85 S. W. 99, it was stated that even as to such dangerous appliances as electricity, in some States that ordinary care is what is required, while in others, an extraordinary degree of care is demanded, that is to say, something more than mere reasonable care; and it is further said in that case that the case of Geismann v. Missouri-Edison El. Co. "undoubtedly puts this State with the latter class, for it is there expressly said that the law requires more than keeping the wires reasonably safe." The rule established, therefore, is that *the utmost degree of care* should be required in such cases, and that the utmost care should be used in keeping the wires insulated. The reason given in all these cases is that, considering the noiseless, hidden and destructive power of electricity, a reasonable effort to control it is nothing short of the utmost effort; that nothing less than the utmost would be a reasonable effort. Still more recently, applying the principles above stated, the case of Brown v. Consolidated Light, Power & Ice Co., supra, holds that the owner of electric wires in a public street must exercise the highest degree of care to protect people using such streets against the risk of injury from such highly dangerous agencies. These authorities leave no question but what the instructions given in this case clearly and correctly stated the degree of care required of the appellant by the law.

V. As to the sleet storm, the court gave the following instructions, No. 5 for the respondent and No. 10 for the appellant:

"5. Although the jury may believe from the evidence that the sleet storm mentioned in evidence was severe and unusual, yet if it was such a sleet storm as common experience teaches people in this vicinity to ex-

pect, then it was the duty of the defendant company to have expected the same, and to have made and used precaution to guard against its effects."

"10. The court instructs the jury that if they believe and find from the evidence that on the morning of the accident in controversy there had been an extraordinary and unusual sleet storm and that defendant's wires were covered with a heavy coat of sleet and that the trolley pole, without fault or negligence on the part of the defendant, jumped from the trolley wire and caught defendant's wires and broke said wires apart so as to cause them to fall and the guy wire to fly around and hit and strike the plaintiff and that the trolley poles under the best regulation and care will jump from the trolley and cannot be prevented from so doing, and that the cause of the breaking of defendant's wires was a heavy sleet on said wires caused by such extraordinary and unusual sleet storm, and said trolley pole jumping from the trolley wire and catching on said wires, then and in that event, defendant is not liable in this case, and your verdict will be for the defendant."

Appellant objects to respondent's instruction, claiming that it is not sustained by the evidence in the case. Evidence was offered by respondent tending to show that the sleet storm was a mere frost compared with some other storms that had occurred in that vicinity; that it was no worse than common experience had taught the witnesses to expect in that vicinity. These instructions, considered together, fairly presented the liability of the defendant company in case the sleet storm was unusual and unprecedented. If it was such a sleet storm as common experience taught the people in that vicinity to expect, it was the duty of appellant to have expected the same and to have made and used precautions to guard against its effects. This would be especially true in the case of overhead trolley wires charged with electricity.

144 App—19

The rule of law applicable to such cases has been often declared, and is to the effect that if the defendant's negligence concurs with the act of God, in point of time and place, or otherwise so indirectly contributes to plaintiff's damage that it is reasonably certain that the other cause would not have sufficed to have produced the injury, then the defendant is liable, notwithstanding he may never have anticipated the intervention of super-human force. [Brash v. City of St. Louis, 161 Mo. 433, 61 S. W. 808; Harrison v. K. C. El. Light Co., 195 Mo. l. c. 623, 93 S. W. 951; Reed v. St. L., K. C. & N. Ry. Co., 60 Mo. 199; Pruitt v. H. & St. J. Ry. Co., 62 Mo. 527.] Hence, upon a consideration of the evidence and the instructions given as to the sleet storm, it appears that the defence as to the extraordinary and unusual sleet storm was fully and fairly presented to the jury on appellant's own theory, and its own prepared instruction on that subject was given by the court and fully covered the evidence of appellant, and literally cuts the ground of complaint in that respect from under appellant's feet.

VI. Appellant complains of the giving of instruction No. 6 for the respondent which is as follows:

"The court instructs the jury that if under the evidence and instructions of the court, you find in favor of the plaintiff, you should assess his damages at such an amount as you believe from the evidence, will be a fair compensation to him for the pain of body and mind, if any, which he has suffered, occasioned by his injuries, in question, and for such pain of body and mind, if any, as in all probability he will suffer in the future, occasioned by such injuries, and for such permanent injuries, if any, to plaintiff, as you may find from the evidence was occasioned by said injuries, and for the loss of earnings, if any, as you may believe from the evidence he has suffered in consequence of such injuries, or will in all probability suffer on ac-

count of said injuries and for such reasonable actual expenses, if any, which he had incurred for surgical and medical treatment, but the total damages which you may allow plaintiff must not in any case, exceed the sum of twenty-five thousand dollars."

It is contended that this instruction was improperly given for the reason that under the petition and evidence respondent was not entitled to recover expenses for surgical and medical treatment because the proof must correspond with the allegations of the  petition.

The petition alleges that "he (respondent) has been put to a great expense for medical attendance and nursing and for the purchase of drugs and medicines to the amount of four hundred dollars." The evidence tended to show that the respondent had incurred liability for doctor bills to the amount of one hundred and seventy dollars which had not been paid. The instruction tells the jury that if they find for the plaintiff, they should assess his damages at such an amount as they believed from the evidence would be a fair compensation, etc., and for such reasonable, actual expenses, if any, which he had incurred for surgical and medical treatment. It will be noticed that the petition alleges that "he had been put to great expense" for medical attendance, etc., and not that he had been out or expended large sums of money, and in this respect the petition does not limit the scope of the inquiry to "expenses paid" as in the case of Nelson v. Metropolitan Street Ry. Co., 113 Mo. App. 659, 88 S. W. 781, or as in the case of Muth v. St. L. & M. R. R. Co., 87 Mo. App. 422, that he was compelled to expend large sums. "Put to expense" as used in the petition would reasonably mean "had incurred or been compelled to incur expense." The word "expense" in common speech and in contracts, signifies not only the cost of contemplated services, materials, etc., but also the charges for such as have been performed or furnished whether paid for or not. [18 Cyc. 1502.] The authorities

cited by appellant are not analogous and the objection is not well taken.

VII. Appellant offered certain instructions marked A, B, C, D, E, F. A careful examination shows that they were either commentaries on the evidence or not applicable to the facts, or were fully covered by instructions already given.

It may be said generally in regard to the instructions asked by appellant and refused by the court that it was not the duty of the court but of the appellant to prepare and present proper instructions. Section 748, Revised Statutes 1899, authorizes either party to a civil suit to move the court to give instructions on any point of law arising in the case which instructions shall be in writing and shall be given or refused. The construction of this statute is that mere non-direction is not misdirection and is not reversible error. [Morgan v. Mullhall, 214 Mo. l. c. 463, 114 S. W. 4.]

VIII. The evidence tends to show that prior to the accident, the respondent was a strong, able-bodied man. After the accident, his face showed that he had received a charge of electricity when struck by the broken wire; that his injuries were so severe that he remained unconscious ten or twelve days; his lip was cut to the teeth and he had a white line resembling an electric burn from ear to ear; his eyesight and hearing were affected; his hair turned gray, and during the short time from November 20th to March 23d he had aged from ten to fifteen years; he was unable after the accident to perform any kind of manual labor and physically and mentally he had become an utter wreck. Under this state of the evidence, the verdict was not so excessive as to warrant us in setting it aside as being the result of passion and prejudice.

This was not a case in which the wires of appellant had been broken down or misplaced by a storm and the

Booker v. Railroad.

injury had occurred before the appellant had time to remedy the defect or obtain reasonable notice of the danger from the fallen wire. The breaking of the wire which injured respondent happened in broad daylight when the appellant's servants were present and themselves using the wire in the operation of its road.

If, as claimed by appellant, there had been an unusual and unprecedented sleet storm, the appellant and its officers and agents had full knowledge of this, and as their evidence shows, had full knowledge of the effect of the storm on the wire, and of its weakened condition because of the sleet, and of the increased risk of breakage; and they were certainly guilty of negligence in permitting the cars to run, under the circumstances, and produce the injury, knowing that the overhead wire charged with electricity was weighted down with sleet from such unusual storm. And when it is further considered, as the evidence amply shows, that the trolley wire was an inferior wire, and had been so worn by long use as to destroy one-half of its normal strength, we have ample evidence of negligence to support the verdict.

Upon the fullest examination of the case, we find that the law was properly declared by the able judge who tried the case. The evidence of appellant's negligence was, to say the least, sufficient to carry the case to the consideration of the jury. We cannot but conclude that the verdict was authorized by the law and the evidence and we find that no material error was committed in the trial of the case. The judgment is therefore affirmed. *Cox, J.,* concurs, *Gray, J.,* having presided as judge in the trial court, not sitting.