257 S.W.2d 649 (1953)
COOPER
v.
804 GRAND BLDG. CORP.
No. 43097.
Supreme Court of Missouri, Division No. 1.
April 13, 1953.
Rehearing Denied May 11, 1953.
*650 Walter A. Raymond, Kansas City, and Lowell L. Knipmeyer, Kansas City, for appellant. Parker & Knipmeyer, Kansas City, of counsel.
Albert Thomson, Davis, Thomson, Van Dyke & Fairchild, Kansas City, for respondent.
VAN OSDOL, Commissioner.
This is an action for $25,000 damages for personal injuries sustained by plaintiff when she was struck by a piece of roofing material alleged to have fallen from a superstructure or penthouse on the roof of defendant's seven-story building, known as the Central Exchange Building, situate at 804 Grand Avenue, Kansas City. Plaintiff relied upon the inference of negligence permitted by the res ipsa loquitur doctrine. A jury returned a verdict for defendant. But the trial court sustained plaintiff's motion for a new trial specifying as a ground for the sustention "that the Court erred in giving Instructions B and D at the request of the defendant * * *."
In stating her claim plaintiff alleged that defendant was the owner of the building, and,
"2. At all times mentioned herein Grand Avenue and Eighth Street, and the intersection of the said Grand Avenue and the said Eighth Street, are public streets and as such were open to the public.
"3. That on or about May 5, 1950, at or about 9:45 A.M. plaintiff was walking in a southerly direction across the east side of the said intersection of Grand Avenue and Eighth Street * * when as a direct result of the negligence and carelessness of the defendant, a large piece of roofing material from the defendant's afore-described building fell upon plaintiff and severely injured and crippled her * * *.
"4. Defendant was in exclusive control and possession of said building and roofing material thereupon and plaintiff does not know, and has no means of knowing the exact cause of the falling of the large piece of roofing material, but alleges that said piece of roofing material would not have fallen except for the negligence of the defendant, and therefore alleges that defendant was negligent in causing, allowing and permitting said piece of roofing material to fall.
"5. As a direct result of the negligence of the defendant, as aforesaid, the large piece of roofing material fell and struck the plaintiff * * *."
Defendant by answer alleged that, if plaintiff was injured at the time and place as stated by plaintiff, such injuries "were directly, solely and proximately caused by an unusual, sudden, violent and extraordinary wind and turbulence of nature at said time and place, which could not have been foreseen, anticipated or guarded against by the defendant, and without any fault or negligence of the defendant contributing to such injuries."
Defendant-appellant contends the trial court erred in granting plaintiff a new trial. Defendant-appellant urges that plaintiff failed to make out a submissible case, and that defendant's motion for a directed verdict at the close of all of the evidence should have been sustained. More specifically, defendant-appellant says that a prima facie case was not made under the res ipsa loquitur doctrine, because the inference that plaintiff's injuries were due to an unprecedented wind of hurricane velocity was established by plaintiff's evidence, and the inference that the action of the wind caused the occurrence was more reasonable than an inference that defendant's negligence was the cause. Defendant-appellant further urges that the evidence was insufficient as a matter of law to make out a submissible case of negligence on the part of defendant. In this behalf defendant-appellant asserts defendant had no duty in the exercise of ordinary care to keep its premises reasonably safe in guarding against such violent, unusual and extraordinary forces of nature as were not to be anticipated. *651 And defendant-appellant further contends Instructions B and D were not prejudicially erroneous and the trial court erred in sustaining plaintiff's motion for a new trial on the ground of error in giving such instructions.
It is our belief that the trial court erred in granting the plaintiff a new trial on the specified ground of error in giving Instructions B and D, and we further believe it unnecessary to the decision of this case to determine the defendant-appellant's contention that plaintiff failed to make out a case submissible to the jury. However, in determining the contentions of the parties relating to the questioned instructions, we think it helpful to state the facts and examine the parties' theories of the law applicable to the issues.
There was evidence tending to show that defendant corporation is the owner and has control of the building at 804 Grand, having acquired the property from one Accurso in February or March, 1950. The building is southwest of the intersection of Eighth and Grand. The main roof of the building is covered with a black roofing material coated with tar; and above the main roof are two superstructures or penthouses the roofs of which are covered with the same kind of roofing material as that of the main roof, except that the roof of the west penthouse has been patched with roofing with "green slate" over it. This patchwork had been done while Accurso was the owner, in January, 1950.
Plaintiff, an employee of Harzfeld's, left her home in the morning of May 5, 1950, and arrived by bus at the northeast corner of the intersection of Eighth and Grand. Having alighted from the bus, plaintiff walked southwardly along the east side of the intersection. As she was about to reach the south curb of Eighth Street near the southeast corner of the intersection, "this roofing hit me on the shoulder like this (indicating) and knocked me down, and it fell over my shoulder; when I was down it fell over my shoulder, and the man that helped me up pulled it off my shoulder and threw it down in front of me." This was about 9:45 o'clock. The roofing was like that on the roofs of defendant's building.
Two witnesses for plaintiff had offices in the United States Courthouse Building situate on Grand Avenue between Eighth and Ninth. They observed the effect of the force of the wind the morning of May 5th. From their offices on the west side of the Courthouse Building, on a floor-level higher than the top of the Central Exchange Building, they looked westwardly some 120 feet towards the roof of the Central Exchange Building. "The wind was blowing from the southwest * * * at least 60 miles an hour in gusts. I am saying this from experience, because I have gone to sea, and have been in gales and windstorms; this wind was taking pieces of tarred felt paper off of the (west) superstructure of the Central Exchange Building." The wind was blowing across the building toward the intersection. "I saw pieces in the air eighteen inches to two feet in diameter." The witnesses described the force of the wind as blowing "very hard." The wind really got started to blowing at a very high degree, "I would say between ten and eleven o'clock," that morning. "My estimate would be that the wind was at least approaching hurricane force during the peak of the storm." However, one of these witnesses said that, later in the day, he observed roofs of the Central Exchange Building and other adjoining buildings. "The only place I saw the roofing gone was from the Central Exchange Building." (In this connection defendant introduced evidence tending to show that during the observed minute of 9:27 a. m. "velocities reached gusts of 76 m. p. h.," the strongest winds recorded at Kansas City in sixty-one years; and the "fastest mile" speed for the observed minute of 11:05 a. m. was 68 miles per hour. "In the classifications of the Beaufort scale a hurricane begins at 73 miles an hour." Defendant also introduced evidence tending to show many instances of damage to buildings, roofs of buildings, and trees occasioned by the winds of May 5th.)
Plaintiff introduced into evidence photographs taken of the roof of the west penthouse *652 on May 13th. These photographs show that roofing material had been torn or blown from the west side of the roof of the west penthouse. The boards, planks, or "sheeting" to which the roofing materials had been nailed are disclosed as being old, cracked, splintered and frayed, particularly at the ends of the planks at the west edge of the penthouse roof, although it must be conceded that some of the splintering of the lumber may have been caused by the force of the wind. The photographs also show a narrow wooden flashing had been nailed irregularly on or along the edge of the roof and roofing. The plaintiff further introduced testimony tending to show that roofing material had blown from the roof of defendant's building from time to time prior to and during the months of February and March, 1950. It blew over onto the roof of an adjacent building, "I used to get it downstairs all the time. I had to sweep it away. The least little wind some of the roof would come off."
In support of its initial contention that the trial court erred in submitting plaintiff's res ipsa loquitur case to the jury, defendant-appellant cites, among others, the cases of Hendricks v. Weaver, Mo.Sup., 183 S.W.2d 74, wherein there was no showing of the circumstances of the occurrence other than the mere fact that a fire originated in a portion of a building in the possession and control of defendants; Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702, wherein there was no showing of what caused the chain to breakthe facts and circumstances of the occurrence were as accessible to plaintiff as to defendant and the plaintiff's injury could have been caused by the act of a fellow servant for whose conduct defendant was not in that case legally responsible; and Weisbrod v. Katz Drug Co., Mo.App., 223 S.W.2d 97, wherein the steel delivery-chute door could have been caused to fall by one for whose conduct defendant was not responsible. In these cases, and others cited by defendant-appellant, there was a lack of evidence of the physical cause of the occurrence, or the shown attendant circumstances were not such as would support a reasonable inference that some physical cause of the occurrence was occasioned by some act or omission of defendant (or of another for whose conduct the defendant was legally responsible). We bear in mind that the attendant facts must raise a reasonable inference of a defendant's negligence (but they need not exclude every other inference). Maxie v. Gulf, M. & O. R. Co., 358 Mo. 1100, 219 S.W.2d 322, 10 A.L.R.2d 1273. It also seems that a defendant's negligence concurring with an abnormal action of a force of nature in causing an injury may be established prima facie under the rule of res ipsa loquitur. Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W.2d 163.
In the case at bar there was a circumstance shown in evidence in addition to the shown circumstances that defendant was in control of the building and that the roofing was ripped off the west superstructure roof by a wind of unusual velocity, and that plaintiff was injured. There was evidence that the roofing of the building including that of the west penthouse was defective. It could be reasonably said that the defective condition of the west superstructure roof was due to negligence in construction and maintenance or repair, and we shall assume, for the purpose of this review, that it could not be said the evidence of the condition certainly demonstrated the specific negligent act or omission which occasioned the condition. Fragments of roofing had previously blown from defendant's building. The planks of the sheeting were deteriorated, especially at the west edge of the roof. The roof apparently had been constructed so that the edge of it was protected from the elements of nature by a narrow wooden flashing. We may call the defective condition a physical cause of the occurrence of plaintiff's injury. It was a condition making the roof peculiarly vulnerable to the action of the elements. This defective condition could have been reasonably found to have been due to negligence of defendant because of defendant's control of the building.
Defendant-appellant does not contend that defendant, owner of a building abutting on a street, had no duty to exercise ordinary *653 care to keep its building in such a condition that no part of it would fall and injure persons traveling on the street, nor does defendant-appellant contend that, as the owner of a building abutting on the street, defendant had no duty to exercise ordinary care in protecting the traveler from the hazards of objects caused to fall by winds of such force as were to have been reasonably anticipated. See and compare Murphy v. Duerbeck, Mo.Sup., 19 S.W.2d 1040, 1042, cited by defendant-appellant, and note that Instruction No. 5 in that case required the finding of the negative of defendant's negligence in the maintenance of the fence by hypothesizing that "the fence in question was of sufficient strength to withstand such wind as an ordinarily prudent man would anticipate". In the case of Kennedy v. Union Electric Co. of Missouri, 358 Mo. 504, 216 S.W.2d 756, it was written that usually the question whether a force of nature (in that case, abnormal rainfall flooding lands) is such as should be anticipated and guarded against is a jury question. It could be further urged that defendant was negligent and the negligence was a cause of the occurrence without which plaintiff would not have been injured, and that the evidence in the instant case relating to the unusual velocity of the wind did not as a matter of law negative the causative effect of some negligence of defendant in the construction, maintenance or repair of the roofs of its building. Haney v. City of Kansas, 94 Mo. 334, 7 S.W. 417; Brash v. City of St. Louis, 161 Mo. 433, 61 S.W. 808. The occurrence of the injury of plaintiff was of a kind likely to result from the defendant's negligence in the construction, maintenance or repair of its roofs; and the causal connection, if so, of defendant's negligence, if any, was not necessarily broken by the intervening action of extraordinary winds although the winds were of such force as would not be anticipated. Haney v. City of Kansas, supra; Brash v. City of St. Louis, supra; Restatement, Torts, § 451. See also and compare Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35. But if the winds were found to have been of such irresistible force that plaintiff would have been injured, although defendant had not been negligent, defendant's negligence was not the cause of plaintiff's injury. Haney v. City of Kansas, supra; Brash v. City of St. Louis, supra. And, if the winds were found to be of such extraordinary violence as to be irresistible, overpowering and in effect unpreventable, then the phenomenon was vis major amounting to an act of God in the real sense of the latter term and no human fault could be correctly said to be a proximate cause of the occurrence of the plaintiff's injury. Whitaker v. Pitcairn, supra; Kennedy v. Union Electric Co. of Missouri, supra; Vol. 1, C.J.S., Act of God, pages 1423-1426.
For the purposes of the decision of this case, we tentatively conclude, but we do not decide, that the evidence, considered from a standpoint most favorable to plaintiff, would have supported the reasonable findings that plaintiff's injury was the result, in part at least, of human faultsome kind of negligence of defendant; and that defendant's negligence was the proximate cause of plaintiff's injury, or a proximate cause which concurred with the force of the unusual wind in causing plaintiff's injury. This, it seems, was the theory of plaintiff's case.
It was a theory of defendant's defense that defendant was not negligent, and defendant introduced evidence tending to show that the roofs of its building, including that of the west penthouse, were properly constructed and maintained, and in a reasonably sufficient state of repair. It was a further theory of defendant, and defendant, as stated, introduced evidence tending to show that the wind was so extraordinarily violent and irresistible that its force would have occasioned plaintiff's injury (though defendant had or had not exercised due care in the construction, maintenance or repair of its roofs) and was the sole and the proximate cause of the occurrence of plaintiff's injury; and that consequently defendant's negligence, if any, was not or could not have been the proximate cause or a proximate cause.
*654 If we have correctly analyzed the theories of plaintiff's case and of defendant's defense, then we are of the further opinion that we should not follow and affirm the trial court's ruling that it had erred in the giving of Instructions B and D.
At the defendant's request the trial court gave Instruction B, which was as follows,
"The Court instructs the jury that the burden of proof is upon the plaintiff to show by the greater weight of the credible evidence that she was struck by defendant's roofing material and that the defendant was negligent in causing, allowing and permitting roofing material to fall, if you so find, and that said negligence, if any, was the cause or contributing cause of said occurrence, if you find and believe from all the evidence in the case that the defendant was not negligent, or, even though the defendant was negligent, that said negligence did not cause or contribute to cause said occurrence, then your verdict must be in favor of the defendant."
And, at defendant's request, the trial court gave Instruction D, as follows,
"The Court instructs the jury that the plaintiff's charge or instruction to you is one of negligence of the defendant and that the burden of proof is upon plaintiff to show by the preponderance or greater weight of the credible evidence that the defendant was negligent. You should not find that defendant was negligent from the mere fact alone of the occurrence shown by plaintiff's evidence, if you find and believe from all the evidence in the case that defendant was not negligent; and, if you do find and believe from all the evidence in the case that the defendant was not negligent, then your verdict should be for the defendant."
Plaintiff-respondent asserts that Instruction D contains language of like substance as the criticized "charge of negligence" contained in Instruction C in Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003, "`the charge * * * is one of negligence'" and "`a charge of negligence'" in Instruction No. 4 in Duncan v. St. Louis Public Service Co., 355 Mo. 733, 197 S.W.2d 964, 965, and in Instruction C in Winston v. Kansas City Public Service Co., Mo.Sup., 249 S.W.2d 377. In none of these cases was it held that the use of the quoted criticized language in an instruction was an error of law. In the Winston case we remarked that we believed this court had not said a trial court's action in granting a new trial on the ground that such an instruction was misleading would not be upheld. (We think the author of the Winston opinion should have further said that the granting of a new trial on the ground that an instruction containing the criticized language was misleading is a discretionary matter subject to an appellate court's review as to abuse thereof.)
Plaintiff-respondent further calls our particular attention to the part of Instruction B which told the jury that the plaintiff must prove by the preponderance or greater weight of the credible evidence "that the defendant was negligent in causing, allowing and permitting" the roofing material to fall, and argues that Instruction B requires plaintiff to prove, not the facts of the occurrence, but requires plaintiff to prove the cause of the occurrence and then requires the jury to find that the cause of the occurrence was the negligence of the defendant. Instruction B is subject to the criticism of a "double" submission or overemphasis of causation, and the drafter seems to have inadvertently omitted a conjunctive, "and"; but, in requiring plaintiff to prove defendant's negligence "in causing, allowing and permitting roofing material to fall," Instruction B is in substance the same as alleged in Paragraph 4 of plaintiff's petition. We do not presume the trial court in the instant case granted a new trial on any discretionary ground inasmuch as no discretionary ground was specified in the order granting the new trial. Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366; Section 510.330 RSMo 1949, V.A.M.S.; Missouri Supreme Court Rule 1.10. The order granting the new trial does not disclose that the trial court found as a *655 factual issue that Instructions B and D were merely prejudicial or that they embarrassed plaintiff in establishing her case as contradistinguished from errors of law, Mendenhall v. Neyer, supra, nor has plaintiff-respondent demonstrated here that the language of the instructions was misleading in the application of law to the facts of this case.
It is precisely true that in a res ipsa loquitur case as in any negligence case a plaintiff has the burden of proving by the preponderance or greater weight of the credible evidence the essential elements of the casenegligence, causation, and injury. Having hypothesized the alleged facts of the unusual occurrence of plaintiff's injury and having further advised the jury that an inference of negligence was warranted, plaintiff's principal Instruction No. 1, quite as in the suggested plaintiff's principal Instruction No. 1 in Harke v. Haase, supra, submitted defendant's negligence, and causation to the jury. Defendant was entitled to have the court instruct the jury relating to the burden of proof on these issues. We see no error of law as applicable to the issues and the evidence of the instant case in either of the two instructions B and D.
Trial courts have wide discretion in passing on motions for a new trial where there is error in the record, and may even grant a new trial irrespective of the grounds assigned in a motion for a new trial, yet the power of the trial court to grant a new trial is discretionary only as to questions of fact and matters affecting the determination of issues of fact. There is no discretion in the law of a case, nor can there be an exercise of sound discretion as to the law of a case. Jarboe v. Kansas City Public Service Co., 359 Mo. 8, 220 S.W.2d 27; Mendenhall v. Neyer, supra; Schipper v. Brashear Truck Co., Mo.Sup., 132 S.W.2d 993, 125 A.L.R. 674; Yuronis v. Wells, 322 Mo. 1039, 17 S.W.2d 518; Loftus v. Metropolitan St. R. Co., 220 Mo. 470, 119 S.W. 942.
The order granting a new trial should be reversed and the cause should be remanded with directions to reinstate the verdict for defendant and to enter judgment thereon.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.