MAGDALEN WASHBURN, Respondent, v. LACLEDE GAS LIGHT COMPANY and UNION ELECTRIC LIGHT & POWER COMPANY, Appellants.

St. Louis Court of Appeals. Argued and Submitted March 6, 1919. Opinion Filed April 8, 1919.

Motion of Laclede Gas Light Company for Rehearing Overruled April 23, 1919.

Motion of Union Electric Light & Power Company for Rehearing Sustained April 23, 1919.

Cause Reheard as to Defendant, Union Electric Light & Power Company, May 7, 1919. Opinion Filed July 3, 1919.

1. **MASTER AND SERVANT: Injuries to Servant: Negligence: Live Wires: Failure to Wear Rubber Gloves: Contributory Negligence.** In an action for damages, by the widow of a deceased lineman who was killed by contact with a live electric wire, etc., even though deceased's employer had furnished him with rubber gloves, which, when in use, afforded protection against a current of high voltage, for use when working with wires, where the rules and regulations of his employer did not make it necessary for him to have them on at all times while engaged in his work, and it appears from the evidence that at the particular time when deceased was injured he was not handling any wire or doing anything that required him to have gloves on, *held* that the failure of deceased to have such rubber gloves on at the particular time he was injured did not make him guilty of contributory negligence.

2. **NEGLIGENCE: Liability for Personal Injuries: Natural and Probable Result of Negligence.** The liability of a person charged with negligence does not depend upon the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the injury complained of, but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.

Washburn v. Laclede Gas Light Co.

3. ————: Electricity: Personal Injuries: Defective Insulation of Wires: Proximate Cause. Where a lineman employed by one electric company was killed while at work on poles, etc., by putting one hand on an iron block, the hook of which had cut through the insulation of the wire to which it was attached, and by putting his other hand on a defectively insulated buzz wire of another electric company not at the time carrying current, his body thereby forming or completing a circuit, etc., *held* that the independent intervening cause which was the proximate cause of the injury was the negligent act of the employer company in the use of an instrumentality in such a manner as to cut through the insulation of its wire down to the copper wire itself, and thus permit an escape of electric current from its wire, and that the act of the other electric company in allowing the insulation on its buzz wire to become defective was not the natural and probable cause of the injury to plaintiff's decedent.

    REYNOLDS, P. J., dissents as to the reversal of the judgment against the Union Electric Light and Power Company (the other electric company), *holding* that such company was chargeable with knowledge of the fact that men would be on those poles, working around those wires, and that to maintain a defectively covered, imperfectly insulated wire, was to invite danger, and that it was the duty of such company to use due precaution to prevent possible accident by not leaving a defectively protected wire in that position among those surroundings, and to keep in place a properly protected wire.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. George H. Shields,* Judge.

AFFIRMED as to Laclede Gas Light Company.

REVERSED as to Union Electric Light & Power Company.

CERTIFIED TO SUPREME COURT.

*Werner & Penney* for appellant, Laclede Gas Light Company.

(1) The court below erred in refusing the instructions offered on behalf of the defendants, the Laclede Gas Light Company, in the nature of demurrers to the evidence, because under the uncontradicted evidence, the deceased husband of plaintiff was, as a matter of law, guilty of contributory negligence in this, that having

been provided by the Laclede Gas Light Company, his employer, with rubber gloves for the express purpose of insulating him and protecting him from dangerous wires, which gloves he was required, under the regulation of his employer, to wear whilst engaged in the work at the time and place in question, and having them with him and having worn them just before the accident, he, whilst still surrounded by the wires upon which he was working, removed them from his hands and placed them under his belt, and brought his bare hands into contract with the charged wires. Junior v. Missouri Electric Light & Power Co., 127 Mo. 79, 84. Biddlecom v. Nelson Grain Co., 178 S. W. 750. (a) The rule announced by our Supreme Court in the Junior case has received the sanction of many other courts. See: Hart v. Alleghany Co., 201 Pa. 234, 236; Hunn v. Wolff Mfg. Co., 94 Ill. App. 122, 126; White v. Thomasville L. & Power Co., 66 S. E. 210; Pierson v. Citizens Tel. Co., 123 N. W. 642; Gilbert v. Burlington, etc., Co., 128 Fed. 529, 532; Williams Cooperage Co. v. Headrick, 159 Fed. 680, 683; Reed v. Norristown El. L. & P. Co., 223 Pa. St. 591. (b) Courts rightly enforce the reasonable rules and regulations adopted by employers for the protection of their employees in their work, and insist upon their faithful performance. "The law knows no such incongruity as holding the master to the duty of making, with the right of making, without at the same time requiring from the servant full conformity to, the regulations." Missouri, K. & T. Ry. Co. v. Collier, 157 Fed. 347; 18 Ruling Case Law, 573, sec. 80, and cases cited, including Reagan v. St. Louis & C. R. Co., 93 Mo. 348; Schroeder v. Chicago, etc., R. Co., 108 Mo. 322. (c) As to the correlative obligation resting on employees to yield obedience to all proper rules and orders, see: 18 Ruling Case Law, 659, sec. 152. (d) Where the servant omits to use an appliance furnished by the master for his protection, he cannot be held to complain of an injury sustained, resulting from his failure to use the appliance furnished. 2 Labatt's

Master and Servant (2 Ed.), page 3496; Anderson v. Forrester-Nace Box Co., 103 Mo. App. 387; Wilkinson v. Andriano Bottling Co., 154 Mo. App. 563: (e) Our courts have declared that where an employee has the choice of two ways of performing his labor, one of which is safe and the other subject to risks and dangers, and he chooses the dangerous way and is thereby injured, he is guilty of contributory negligence and cannot recover. Montgomery v. Chicago Great Western R. Co., 109 Mo. App. 88; Dunphy v. St. Joseph Stock Yards, 118 Mo. App. 506; Richardson v. St. Louis & H. Ry. Co., 223 Mo. 325; 123 S. W. 22; Kelley v. Chicago & A. Ry. Co., 105 Mo. App. 365; Roberts v. Missouri & Kan. Tel. Co., 166 Mo. 370; Smith v. Forrester-Nac Box Co., 193 Mo. 715, 737; Hurst v. Kansas City, etc., R. Co., 163 Mo. 309, 322; Shore v. American Bridge Co., 111 Mo. App. 278, 289; Hirsch v. Freund Bros. Bread Co., 150 Mo. App. 162; 129 S. W. 1060, 1062, 2d col. (f) Even under a Workmen's Compensation Act, which denied an award where there is evidence of willful misconduct on the part of the injured or deceased servant, there could be no recovery under the facts in this case. See: Great Western Power Co. v. Pilsbury, 170 Cal. 180. (g) "Safety First!"

*Jourdan, Rassieur & Pierce* for appellant, Union Electric Light and Power Company.

The court erred in refusing to give at the close of plaintiff's case in chief the instruction in the nature of a demurrer to the evidence, requested by the defendant, Union Electric Light and Power Company, and repeated the error in failing to give a similar instruction re-question, as that wire carried no current at the time of whole case. (1) Because the defendant, Union Electric Light and Power Company, was not guilty of negligence in failing to have complete insulation on its wire in question ,as that wire carried no current at the time of the accident, which was in the daytime, and at night only 220 volts, not shown to be dangerous. (2) Because the alleged defective insulation of said wire was not a

proximate cause nor a contributing or concurring proximate cause of the death of plaintiff's decedent. Webb's Pollock on Torts, p. 45; Cooley on Torts (3 Ed.), 99; Wharton on Negligence, sec. 134; Milwaukee & St. Paul R. R. Co. v. Kellogg, 94 U. S. 460; American Brewing Assn. v. Talbot, 141 Mo. 683; State ex rel. v. Ellison, 271 Mo. 463, 473. (3) Because the deceased was guilty of negligence as a matter of law in that he negligently failed to wear rubber gloves or use other protection provided for him. Junior v. Electric L. & P. Co., 127 Mo. 79; Middlecom v. Nelson Grain Co., 178 S. W. 750; 756; Mason v. Railroad, 161 Mo. App. 610, 621.

*Kinealy & Kinealy* for respondent.

(1) A respondent is only required to notice points raised by the appellant. Stid v. Railway, 236 Mo. 382; Ridemour v. Mines Co., 164 Mo. App. 576. (2) On demurrer to the evidence, all the evidence must be considered and that in plaintiff's favor be taken as true and all inferences resolved favorably to plaintiff. Stauffer v. Railroad, 243 Mo. 305; Fritz v. Railroad, 243 Mo. 62; Williams v. Railroad, 257 Mo. 87. (3) Contributory negligence is rebutted by showing that a thing is done in the usual and customary way. Tibbs v. Railroad, 82 Mo. 292; O'Mellia v. Railroad, 115 Mo. 205; Knorpp v. Wagner, 195 Mo. 687; Martin v. Cotton Oil Co., 163 Mo. App. 106; Trout v. Laclede G. L. Co., 151 Mo. App. 207. (4) Under the evidence in this case no inference of contributory negligence is to be drawn from Washburn's failure to have on rubber gloves when he was killed. Hill v. Union E. L. & P. Co., 260 Mo. 43; Trout v. Laclede Gas. L. Co., 151 Mo. App. 207. (5) Each company owed the same duty to the employees of the other that it did to its own. Van Treba v. Laclede Gas L. Co., 209 Mo. 648; Trout v. Laclede G. L. Co., 151 Mo. App. 207. (6) It was negligence on the part of the Union E. L. & P. Co., to fail to exercise care to forsee and avoid the danger through

which Washburn lost his life. Brady v. Railroad, 206 Mo. 509; Paden v. Van Blarcom, 181 Mo. 117; Campbell v. United Railways, 243 Mo. 141; Asher v. City of Independence, 177 Mo. App. 1. (7) It is not essential that all the details of the particular happening ought to have been forseen. Benton v. St. Louis, 248 Mo. 98; Woodson v. Railroad, 224 Mo. 685; Buckner v. Horse & Mule Co., 221 Mo. 700; Phillips v. Railroad, 211 Mo. 419; Brady v. Railroad, 206 Mo. 509; Zeis v. Brewing Assn., 205 Mo. 638; Dean v. Railroad, 199 Mo. 386; Greer v. Railroad, 173 Mo. App. 276; Schaaf v. Basket & Box Co., 151 Mo. App. 35; s. c. 160 Mo. App. 598. (8) Where the negligence of two defendants concur to cause an injury, both are liable. Bokamp v. Railway, 123 Mo. App. 270; Freeman v. Tel. Co., 160 Mo. App. 271; Trout v. Gas. L. Co., 151 Mo. App. 207; Musick v. Dold Packing Co., 58 Mo. App. 322; Harrison v. K. Cy. Elect. L. Co., 195 Mo. 606; Newcomb v. Railroad, 169 Mo. 409.

STATEMENT.—Plaintiff instituted this action, claiming damages against the defendants Laclede Gas Light Company and Union Electric Light & Power Company for the death of her husband. The husband, Burton Washburn, was in the employ of the defendant Laclede Gas Light Company and was killed on July 11, 1917, while on a pole to which were strung the wires of the two defendants. It is averred that the defendants, in the prosecution of their business, maintained over the public streets and alleys of the city of St. Louis divers poles and wires for the purpose of carrying electric currents of high voltage, dangerous to human beings and likely to kill any person into whom a current might pass; that the Laclede Gas Light Company, hereafter for brevity referred to as the Laclede Company, maintained a certain pole on the northwest corner of Broadway and Mullanphy streets in that city, on which pole there were a large number of double cross-arms, upon some of which the Laclede Company main-

tained wires carrying an electric current of 2300 volts, and upon others of the cross-arms the Union Electric Light & Power Company, hereafter referred to as the Union Electric, by permission of the Laclede Company, maintained wires carrying a similar electric current; that prior to July 11, 1917, Burton Washburn was in the employ of defendant Laclede Company as a lineman, earning $4.50 a day; that on that 11th of July, Washburn and other employees of the Laclede Company, under the direction of a foreman of that company, and in the course of their employment, got upon this pole, which carried a number of wires of the defendants, in order to change and replace one of the cross-arms; that in order to do this, it was necessary to detach from this cross-arm the wires supported on and by it, and to raise up and support the wires while the cross-arm was being detached from the pole and replaced by a new one; that the wires on the cross-arm which was being replaced belonged, to the defendant Laclede Company; that on a cross-arm slightly above the one being replaced, defendant Union Electric maintained wires of the character above described, two of which ran lengthwise along a cross-arm on the same side of the pole as that on which Washburn was located in doing the work of assisting to replace the cross-arm belonging to the Laclede Company; that the covering and insulation of the wires belonging to the Union Electric were old, worn, frayed, defective and insufficient; that Washburn's position when assisting in the work, was on the north side of the pole, and the first wire attempted to be raised from the cross-arm to be replaced, was the second wire on the west side of the pole; that Washburn and another employee of the Laclede Company untied the wires from the insulator upon the pin in the cross-arm, whereupon other employees of the Laclede Company, under the direction of a foreman, undertook, to raise the wire for the purpose of having it tied up out of the way of the contemplated work of taking down and replacing the cross-arm; that for the purpose of

raising the wire, the Laclede Company, negligently, as
it is charged, furnished a certain block and tackle,
consisting of two iron pulley blocks connected by a
rope passing over the pulleys in the blocks and thence
down to the ground; that each of these pulley blocks
had an iron hook; that under the direction and in-
struction of the foreman, a rope sling was first placed
upon a cross-arm above the one to be replaced—on the
portion of the cross-arm east of the pole, and the hook
in the upper pulley block of the block and tackle was
put into this sling and the block and tackle passed
thence downward on the north side of the pole, and the
hook in the lower pulley block was placed under the
wire which Washburn and his fellow employee had un-
tied from the insulator; that this wire, as alleged, was
negligently maintained by the defendant Laclede Com-
pany with insufficient insulation thereon and with the
insulation and covering thereon old, worn, rotten, de-
fective and insufficient to prevent a current of elec-
tricity from passing from the wire into the iron hook
and pulley block, if the block should be drawn tight-
ly against the wire; that this wire carried a current of
electricity of high voltage, to-wit, about 2300 volts, which
was dangerous to human life and likely to cause the
death of any person into whose body it should pass;
that after the block and tackle had been attached to
the upper cross-arm and to the wire, an employee of
defendant Laclede Company upon the ground near the
pole, under the direction of the foreman, pulled upon
the rope of the block and tackle for the purpose of
lifting the wire by drawing the pulley blocks close to-
gether, and so putting a strain upon the wire; that
when the strain was put on the block and tackle and
on the wire, the hook upon the lower pulley block was
drawn tightly against the wire and by reason of the
insufficiency of the insulation thereon, as before charged,
the hook and iron pulley block became charged with
a dangerous current of electricity passing through the
wire; that when the strain was put on the block and

tackle, the wire was raised and the pin supporting the insulator to which the wire had been attached was pulled out of the cross-arm and Washburn's left hand came in contact with the defectively insulated wire belonging to the Union Electric Company, negligently maintained, as it is charged, by that company on this pole, and his right hand came in contact with the iron pulley block, whereby a circuit was formed and a dangerous current of electricity of high voltage was thereby caused to pass through Washburn's body, resulting in his instantaneous death.

It is charged that Washburn's death was directly caused and contributed to by the negligence of defendant Laclede Company in the following particulars, viz:

"1. In negligently permitting the Union Electric Light & Power Company to maintain upon said pole said insufficiently insulated wire with which plaintiff's husband's left hand came in contact and with the insulation on said wire old, worn, rotten, frayed, defective and insufficient.

"2. In negligently furnishing plaintiff's said husband and his fellow employees engaged in doing said work a block and tackle with iron pulley block instead of wooden ones.

"3. In negligently maintaining said wire, under which said hook was passed, insufficiently insulated and with the insulation thereon old, worn, rotten, defective and insufficient.

"4. In negligently connecting said lower iron pulley block with said wire by means of an unprotected and uninsulated iron hook attached to said iron pulley block.

"5. In negligently undertaking to raise said wire of the Laclede Gas Light Company by means of said iron pulley block with said iron hook attached thereto by hooking said hook on and under said wire when the insulation and covering on said wire was insufficient to prevent the electric current in such wire from passing into said iron hook and pulley block.

"6. In negligently causing said pulley blocks and tackle to be so hung from the east to the west side of said pole and in such manner and position that when strain was put upon said tackle, pulleys and wire, after the lower pulley block was hooked into the wire to be moved, the lower pulley block was likely to become charged with a dangerous current of electricity and to come in contact with plaintiff's husband and injure him.

"7. In negligently failing to cover said Union Electric Light & Power Company's said wire with some apron or temporary covering of insulating material so as to protect plaintiff's husband from injury in case he should come in contact with said wire.

"8. In negligently failing to place a rope sling or an apron or temporary covering of insulating material between the iron hook on said lower pulley block and the wire under which said hook was placed.

"9. In negligently failing to furnish the plaintiff's husband a reasonably safe place to work."

Plaintiff further charges that her husband's death was directly contributed to and caused by the negligence of defendant Union Electric Company in the following particulars, namely:

In negligently maintaining on the pole the negligently insulated wire with which Washburn's left hand came in contact and upon which wire the insulation was old, worn, rotten, frayed, defective and insufficient.

Placing her damages at the sum of $10,000, plaintiff demands judgment for that amount.

The defendants answered separately, the Laclede Company, after a general denial, pleading contributory negligence on the part of Washburn, in that he knew that he was working among wires that were dangerous and insufficiently insulated and worked among them with knowledge of this fact, and that while he was provided with rubber gloves and required, under the regulations of the Laclede Company to wear them while engaged about his work and liable to have his hands

come in contact with wires, and nothwithstanding the fact that rubber gloves were upon his person at the time and place mentioned in the petition, he had carelessly and negligently failed to use and wear the gloves while so at work.

The Union Electric, after a general denial, also pleaded contributory negligence, alleging Washburn's familiarity with the situation and conditions in which he was working, and that while provided with rubber gloves, he had failed to have them on at the time.

Replies in usual form of denial were filed to these answers.

Each defendant, at the close of the evidence for plaintiff, and again at the close of all the evidence in the case, interposed demurrers, which were overruled and exception saved.

The facts in the case, as disclosed by the evidence, are practically as set out in the petition so fully as to render it unnecessary to go into a repetition of them here or to add much to them. It is sufficient to say that the evidence in the case substantially follows the averments in the petition and tended to sustain them.

It appeared, practically without dispute, that the Laclede Company had provided Washburn and the men who were engaged in this work with heavy rubber gloves, each man being furnished with two pairs, the gloves tested as to insulation at frequent intervals, those in use on this occasion having been very recently tested and found to be insulated to the extent of preventing voltage as high as 5000 volts passing through them. When Washburn went up on this pole to attend to the work, he had his rubber gloves with him. The day was very warm, and when that is so, these heavy gloves become uncomfortable, cramping the hands and causing perspiration in them. Washburn had them on while actually engaged in detaching the wire from the pin and cross-arm, but when that was done, and the men were engaged in raising the loosened wire by means

of the block and tackle, he appears to have taken off his gloves (just when he did so does not appear), and to have stuck them in his body belt, where they were found after he was killed. While that particular wire was being raised up, the pin and glass insulator on it, around which the wire was attached, was suddenly pulled out from the cross-arm and was falling to the ground, when some one of the party called out, "Look out below." The detaching of this pin and glass insulator apparently loosened or freed the wire from the cross-arm so that the wire swung loose. In protecting himself from contact with it, or from falling, Washburn, then not having his gloves on his hands, stretched out his arms and one hand came in contact with the iron block which was attached to the wire of the Laclede Company and his other hand with the wire known as the buzz wire and belonging to the Union Electric Company. The pressure of the iron hook attached to the block and tackle was so great on the wire of the Laclede Company that it had cut through the insulation and down to the copper wire within, so that when Washburn put one hand on the iron block to which the hook cutting through the insulation was attached; and his other hand on the wire of the Union Electric Company, his body formed or completed a circuit, through which a current of electricity carrying a voltage of 2300 volts passed, killing him instantly. There was testimony that the insulation on the buzz wire was ragged, defective and that the wire was bare in spots. It was also in evidence that in the wagon that this crew of Laclede Company men had with them at the time, there was a rubber apron about twelve by sixteen inches, and rubber covers, the latter being rubber hose split so that they could be put over the wires, but they were not being used, although the work was being done under the direct superintendence of the foreman. It also appeared that Washburn and the others of the crew were aware of the defective insulation of the buzz wires and were experienced linemen. It also was

8—Mo. App.

in evidence that a current carrying 2300 volts was dangerous and if passed into or through a human body would almost invariably cause death.

This was the case, on the facts. There was a verdict against both defendants in the sum of $7250, judgment following, from which each defendant has duly appealed.

## OPINION.

BECKER, J., (After stating the facts as above).—Learned counsel for appellants earnestly insist that, it appearing that Washburn did not have his rubber gloves on while standing with his hands resting as described, plaintiff could not recover. Those counsel further insist that the case at bar falls within the decisions of our Supreme Court in Junior v. Missouri Electric Light & Power Co., 127 Mo. 79, 29 S. W. 988, as well as Biddlecom v. Nelson Grain Co., not officially reported but see 178 S. W. 750, and cases in other jurisdictions in line with those decisions. We do not think that the facts here fall within either of the cases decided by our Supreme Court. While it is true that the Laclede Company, defendant here, had provided these gloves, which, it is urged, when in use, afforded perfect protection against a current as high as 5000 volts, for use when working with wires, it does not appear that at the immediate time of this occurance, Washburn was doing anything that required him to put them on. We do not understand that, even by the instructions or directions or rules and regulations of the Laclede Company, it was necessary for him to have them on at all times while engaged in his work, if he was not, at the time— and the instant of time, as we may say—engaged in handling wires over which a current was passing or might, in the exigencies of the situation, be excepted to pass. From the evidence it appears that at the particular time when he was injured, he was not handling any wire, or doing anything that required him to have

his gloves on. He had evidently taken them off for temporary relief, at a time and under circumstances when he had no occasion to apprehend danger. So the jury evidently found under the instructions which were given to them as to the requirement of wearing these gloves.

In the Junior case, supra, the man was at the very time handling and putting together two wires, from the ends of which he was joining together, the insulation had been scraped off. They were naked copper wires and he was doing the very thing which, at that time, under the regulations of the company, required the use of rubber gloves.

. In the Biddlecom case, supra, a demurrer was sustained at the close of plaintiff's case. From a refusal of the trial court to change its ruling, plaintiff appealed, but the Supreme Court sustained the action of the trial court. There the employee was instructed to use a pole—a wooden pole with an iron hook at the end— when opening and closing the disconnecting switches of the motor. It appeared that he had undertaken to do that with his naked hands and without using this pole. In consequence his naked hands came in contact with a current of electricity passing through the motor and to the switches and so he came to his death. These were the facts on which the Supreme Court affirmed the action of the lower court.

We have no question but that under the facts in evidence, which, as before said, are the facts as set out in the petition and covered by the instructions, the verdict against the defendant Laclede Gas Light Company was correct, and the judgment, as far as that company is concerned, must be sustained.

## II.

We come next to the question as to the liability of the other defendant, Union Electric Light & Power Company. As has been tersely stated in Fishburn v. Railway Co., 128 Iowa, l. c. 492: "The liability of a

person charged with negligence does not depend on the question whether with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission." Quoted with approval in Dean v. Railway Co., 199 Mo. l. c. 411, 97 S. W. 910; Buckner v. Horse & Mule Co., 221 Mo. l. c. 710, 120 S. W. 766. [See, also, Harrison v. Light Co., 195 Mo. l. c. 629, 93 S. W. 951; Hoepper v. Southern Hotel Co., 142 Mo. 378, 44 S. W. 257.]

"The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and if so, the connection is not broken; but if the act of the third person which is the immediate cause of the injury is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the first act or omission, the connection is broken and the first act or omission is not the proximate cause of the injury." [Seith v. Commonwealth Electric Co., 241 Ill. 252.]

"An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence or that would not have resulted from it had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the proximate cause of the injury. A natural consequence of an act is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it." [Cole v. German Savings & Loan Co., 124 Fed. 114.]

Under the facts in this case the defendant, Union Electric Light & Power Company, maintained a wire

through which from dusk until dawn, a current of electricity of 220 volts was carried, but at the time that plaintiff met with his injuries such wire carried no current whatever. A wire belonging to the other defendant, Laclede Gas Light Company, and carrying an electrical current of high potentiality, namely, 2300 volts, was suspended upon the same pole, however upon another cross-arm. So far as this record goes no showing is made that the insulation on the wire of the Laclede Gas Light Company, carrying the 2300 volts of electrical current, was in such condition at the time of the accident that anyone coming in contact with it and with the wire of the Union Electric Company, at the point where its insulation had worn off, would have thereby been injured; but it affirmatively appears that the wire carrying the high potential current of the Laclede Gas Light Company was cut through down to the copper wire by an iron hook attached to an iron block while being used by its employees in putting in a new cross-arm, thus allowing the electricity to escape into the iron hook and thence into the iron block attached to it, and that the plaintiff, at the moment the wire was loosened from the pole, in endeavoring either to save himself from coming in contact with the wire, or from falling from the pole, threw out his arms, one hand coming in contract with the iron block charged with escaping electricity, and the other hand coming in contact with the defendant's Union Electric Light & Power Company's, wire at the place where the insulation was defective and a short circuit was formed and plaintiff was killed.

Should the injury to plaintiff's decedent be held to be a natural and probable consequence of the act of the Union Electric Light & Power Company in allowing the insulation on its buzz wire to become defective? We think not. Defendant under the rule we have above outlined, should be held liable for the natural and probable result of its negligence when such act is the proximate cause of an injury, but defendant should not be

held liable for an injury which could not have been foreseen nor reasonably anticipated as a natural or probable result of the act of negligence complained of on the part of the said defendant.

As we construe the facts as they appear in the record before us, there was an independent intervening cause which was the proximate cause of the injury and such intervening act one that could not reasonably have been foreseen or anticipated as a natural or probable result of said defendant's alleged original negligence. The independent intervening cause which we hold was the proximate cause of the injury, was the negligent act of the defendant, Laclede Gas Light Company, in the use of an instrumentality in such a manner as to cut through the insulation of its wire down to the copper wire itself, and thus permit an escape of electrical current from such wire, with the result stated above.

Our conclusion is that under the facts and circumstances of this case, as they appear from the record before us, in light of the law applicable thereto as we have outlined above, the learned trial judge should have given the instruction in the nature of a demurrer requested by the defendant, Union Electric Light & Power Company, at the close of the case. It follows and it is hereby ordered that the judgment as to the defendant, Laclede Gas Light Company, be affirmed, and that the judgment as to the defendant, Union Electric Light & Power Company, be reversed.

*Allen J.*, concurs; *Reynolds, P. J.*, dissents as to the reversal of the judgment against the Union Electric Light & Power Company in a separate opinion filed, deeming so much of the opinion as reverses the judgment as to the Union Electric Light & Power Company contrary to decisions of the Supreme Court in Brash v. City of St. Louis, 161 Mo. 433, 61 S. W. 808, and other cases cited in memorandum filed by him, the cause, together with all the files therein, is certified to the Supreme Court.

## DISSENTING OPINION.

REYNOLDS, P. J. (dissenting).—While I concur in affirming the judgment as to the Laclede Gas Light Company, I do not concur in reversing it as to the Union Electric Light & Power Company.

It is true the situation is different as to Washburn's relation to the two companies. Washburn and his associates were not in the employ of the Electric Company, or doing any work for it, but they were at work on a pole upon which that company had strung its wires. It is in evidence that the Electric Company's wire, which was called the buzz wire, and ran along one of these arms, usually carried not more than 220 volts of current and then only after dark, and that on this occasion, during the daytime, there was no current on it. Nevertheless, it appears that the covering on it, the material used for insulation, was defective and ragged, not completely insulating this wire. So the real question is, was the Union Electric Light & Power Company responsible for leaving a wire in this condition on this pole? While not carrying an electric current, it was there, and when the covering was off or the insulation defective, that wire was apt to carry any electric current which might, by any chance, be communicated to it from the outside, if connection was made between it and another wire carrying electricity, as in the case at bar, was the wire of the Laclede Company. The Union Electric Company knew that these wires were being carried on this pole by the Laclede Company; in fact, it appears that the pole belonged to the Laclede Company and that the user of it at all by the Union Electric Company was under arrangement between it and the Lacelede Company. It knew that the linemen of the Laclede Company might be working among these wires at any and all times.

When putting and maintaining this buzz wire along the arm attached to the pole that was used in common with the Laclede Company, it was the duty of the Elec-

tric Company to consider, in the interest of the safety of those whom it knew would be working on this pole and about the wires of the Laclede Company, carrying a dangerous current, the possibility that the linemen working with the Laclede Company wires, would be liable to come in contact with it, and that this defectively covered wire might become highly charged with electricity if connection was made between it and wires that did carry a heavy voltage. In the light of that possibility and of the great degree of care required of those using the deadly element that we know as electricity, I hold that it was the duty of the Union Electric Company to use due precaution to prevent possible accident by not leaving a defectively protected wire in this position and among these surroundings, and to keep all its wires in a safe condition. The law requires the utmost care on the part of those in charge to keep in place a properly protected wire. [Giesmann v. Missouri-Edison Electric Co., 173 Mo. 678, 73 S. W. 654; Von Treba v. Laclede Gas Light Co., 209 Mo. 648, 108 S. W. 559; Campbell v. United Railways, 243 Mo. 141, l. c. 152, 147 S. W. 788.] In the latter case it is said at the same page; "Negligence is the failure to exercise the degree of care which prudence required under the circumstances of each particular case." I think, that under the authorities, the Union Electric Light & Power Company was chargeable with the knowledge of the fact that men would be on these poles, working around these wires, and that to maintain a defectively covered, imperfectly insulated wire, was to invite danger. In point of fact, it has been held by our Supreme Court in Von Treba v. Laclede Gas Light Co., supra, that it was not necessary for the plaintiff to prove, as a part of her prima-facie case, that the insulation was off of the wire of the Union Electric Light & Power Company, if it appeared that the injuries to the lineman (Washburn), or his death, were caused by his coming in contact with the wire, it being conclusively proven that the insulation was defective.

We speak here of the wire of the Electric Company, the "buzz wire," as it is called, being imperfectly insulated, of course implying that it was possible to have it insulated to the extent of preventing accident from immediate contact with the wire, and we say this in spite of the fact that the superintendent of construction of the defendant Laclede Company testified that "insulation does not insulate." To quote that witness, he says, after making the above rather remarkable statement:

"It is just a wrong term that is used. It is really only a covering of the wires. It is not really insulation. It is put on mainly for insulation, but it has come to be a common expression, insulation. There is practically no insulation for high tension wires."

Yet this same witness testifies, and in fact the defense of both appellants rests on the claim, that defendant, Laclede Gas Light Company, had furnished each of its men, including Washburn, with a pair of rubber gloves that afforded perfect protection up to 5000 volts. The testimony that there is no such thing as insulation, is somewhat of. the character described by Judge WOODSON, in Hill v. Union Electric Light & Power Co., 260 Mo. 43, l. c. 81, 169 S. W. 345, of which he says:

"It does not arise to the height of respectable nonsense to contend that science can and has so insulated the hand as to make it safe for one to handle a wire of high voltage, and then, in the next breath, insist that science has not and cannot insulate a similar wire with a similar substance with like results."

That learned judge further adds, that the contention that no insulation can be put on wires, "is in direct conflict with common observation and is disproved by common knowledge. If it was not for the perfect insulation of wires carrying high voltage or for some other equally protective system such as are thrown about trolley wires, how long would any or all of the great cities of this and other countries exist? I dare

say that should all insulation be removed from all such wires but few of such cities would survive the night."

The pole, as far as its use was concerned, was a pole used both by the Laclede Company and the Union Electric Company in common, so that each company owed the same duty to the employees of the other company that it did to its own, so far as concerns its duty with reference to the condition of the wires owned by each.

In Newcomb v. New York Central & Hudson River R. R. Co., 169 Mo. 409, 69 S. W. 348, it is said (l. c. 422):

"A defendant may be liable even if the accident was not caused by his *sole* negligence. He is liable if his negligence concurred with that of another, or with the act of God or with an inanimate cause, and became a part of the direct and proximate cause although not the sole cause."

In Harrison v. Kansas City Electric Light Co., 195 Mo. 606, l. c. 623, 93 S. W. 951, it is said:

"The law is well settled in this State that the doctrine of comparative negligence does not obtain in this State. The doctrine of concurrent negligence is firmly rooted in the jurisprudence of this State."

Following this the case of Newcomb v. New York Central & Hudson River R. R. Co., supra, is cited and quoted from as above. The case of Brash v. City of St. Louis, 161 Mo. 433, l. c. 437, 61 S. W. 808, is also cited and the quotation then made from 1 Shearman & Redfield on Negligence (5 Ed.-, sec. 39 (6 Ed.), sec. 39, is approved, to the effect that.

"It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including 'the act of God' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that, if the negligence

of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage.''

This is peculiarly applicable here, in that the negligence of the defendant Union Electric Company in having an insufficiently insulated wire on this pole, did concur with the other cause of the injury in point of time and place, in that, carrying a heavy current through the wire of the Leclede Company, over which a heavy voltage was at the time passing, the current passed through the body of Washburn and resulted in his death, one of his hands coming in contact with the defectively insulated wire of the Union Electric Light & Power Company, the other with the iron pulley and its tackle, the hook of which had cut through the insulation of the highly charged copper wire of the Laclede Company. [See, also, Buckner v. Stockyards Horse & Mule Co., 221 Mo. 700, 120 S. W. 766, where, at page 711, Harrison v. Kansas City Electric Light Co., supra, is quoted approvingly on this point.]

I do not think that the fact that this accident was directly caused by the cutting through of the soft covering of the Laclede Company's wire by an iron hook attached to an iron block, makes any difference here in the liability of the Union Electric. It is true this was a happening the Union Electric Company possibly could not have anticipated. But it did know that the wires of the Laclede Company carried a high and dangerous voltage; that employees of that company were required to work in and among those wires and its own wires, and it was its duty to protect its wires from any and all danger of contact, no matter how made, with the Laclede Company's wires. It seems clear to

me that this accident happened by Washburn, through his body, making a conduit from the Laclede to the Union Electric wire, and if the latter had been properly insulated, the accident would not have occurred.

In this view of the law, I think it clear that the Union Electric Light & Power Company is jointly liable for the result of this happening.