16905

CULBERTSON v. JOHNSON MOTOR LINES, INC., *ET AL.*

(83 S. E. (2d) 838)

*Messrs. Mann, Arnold & Mann,* of Greenville, and *Blackwell, Sullivan & Wilson,* of Laurens, *for Appellant,*

*Messrs. O. L. Long,* of Laurens, and *David E. Crawley, Jr.,* of Kosciusko, Mississippi, *for Respondent,* ▉▉▉▉▉

*Messrs. Mann, Arnold & Mann,* of Greenville, and *Blackwell, Sullivan & Wilson,* of Laurens, *for Appellant,* ▉▉▉

August 16, 1954.

MARTIN, Jr., Acting Associate Justice.

This action was brought in the Court of Common Pleas, Laurens County, by the administrator of the estate of de-

ceased, under the Wrongful Death Statute, Code 1952, § 10-1951 et seq., against the defendant Johnson Motor Lines, Inc. The plaintiff alleges two principal specifications of negligence. Simply stated, it is alleged that the driver of defendant's tractor-trailer committed a negligent and reckless act in suddenly turning on bright lights into the face of an oncoming car and also that its driver failed to comply with the statutory law with reference to placing, and keeping placed, flares at and about his stopped vehicle.

The defendant answered, by a general denial, a plea of contributory negligence and recklessness and also alleged that plaintiff's death was unavoidable on its part. The trial resulted in a verdict for $20,000.00 actual damages in favor of respondent.

At appropriate times, motions for nonsuit and directed verdict were made and after rendition of verdict, motions for judgment notwithstanding verdict and failing in that, for a new trial were likewise made. All motions were refused by the trial Judge and the case is now before this Court on four exceptions.

The scene in question is a part of U. S. Highway No. 25, which runs practically north and south from Greenwood, S. C., to Augusta, Ga. It is a standard highway, eighteen feet concrete with a five-foot asphalt shoulder on each side and straight at the point of collision, which occurred about 10:00 p. m. on a Saturday night, two miles south of Trenton, S. C. This is a much traveled highway, the road being downgrade going south and upgrade going north.

The incident under investigation revolves about the operation of four motor vehicles. Car No. 1, a Mercury driven by Fagan, traveling south, wrecked on the east side of the road and remained in a hanging position at the edge of the ditch. Motor vehicle No. 2, appellant's tractor-trailer, estimated to be about 40 feet in length and driven by Hinton northward, stopped a short distance north of Car No. 1 at edge of concrete and asphalt shoulder. Car No. 3, a Nash

driven by O'Briant, the deceased, owned and also occupied at the time by Nichols, stopped entirely off concrete pavement, about 75 feet north of appellant's tractor-trailer. Car No. 4, a Buick driven southward by Mrs. Lurline Whitworth, came to a stop on the right-hand (west) side of the highway, some feet south of point of collision. Mrs. Whitworth was originally joined as a co-defendant in this suit, but was eliminated by consent of respondent to a directed verdict, unopposed by the appellant.

The factual situation as related by the witnesses, aided by photographs and a diagram, show that Fagan, driver of Car No. 1 flagged vehicle No. 2, appellant's tractor-trailer. (It may be stated that Car No. 1 was not in any way endangering traffic.) Appellant's tractor-trailer stopped at edge of cement and asphalt shoulder and after some investigation, Hinton, the driver, decided that there was nothing he could do to assist Car No. 1, whereupon he returned to his tractor. The tractor was parked, as aforesaid, at the edge of the concrete and asphalt shoulder at an angle facing onto or across the highway. The extent of this angle is a matter of dispute. Io the meantime, Car No. 3, the Nash driven by O'Briant, the deceased, and accompanied by Nichols, traveling northward, passed vehicles Nos. 1 and 2 and stopped in response to Fagan's further flagging, entirely off of concrete paving on the east side of road. O'Briant and Nichols, both soldiers from Camp Gordon, got out of the Nash and proceeded southward, walking as Nichols testified and indicated by diagram on the east side of the center line. Upon reaching appellant's tractor-trailer, driver Hinton was standing in the road at the left front bumper of his tractor. After exchanging a few words with Hinton, they proceeded on southward and about the point where the tractor and trailer connected, were joined by Fagan, who in so doing separated and went between the two soldiers, causing Nichols' clothes to brush against side of trailer as all three proceeded southward (indicated by diagram). In the meantime, and it must have been a short

period of time since the three men had not completely passed the parked trailer, Hinson got into his tractor, started the motor and turned on his lights, he states, preparatory to passing the Nash car and proceeding on his journey northward. From the tractor's parked position, its headlights were angled onto the road and faced any traffic coming southward on highway. Just as Hinton turned on his lights, Car No. 4, the Buick, proceeding southward, came over a slight rise in the road and the driver, Mrs. Whitworth, was blinded by the sudden glare of the tractor's lights, only recovering her sight and visibility of the road at the instant her car hit O'Briant.

When the deceased, O'Briant, was struck by Car No. 4, the Buick, his body was knocked against Fagan, who was thrown against Nichols, who in turn was knocked into the rear end of the trailer. It is undisputed that Hinton, appellant's driver, could see the approaching Buick car and that he knew of the pedestrian's presence in the road.

Mrs. Whitworth testified in reference to the lights as follows:

"A. As I came over the crest, he pulled the lights on.

"Q. The driving lights? A. Yes."

\* \* \* \*

"A. Just as I came over this hill, these lights flashed right in my eyes.

"Q. What kind of lights were those? A. They were bright lights."

The appellant's driver, Hinton, testified:

"Q. What lights did you turn on? A. My headlights.

"Q. And you say you had your lights on, your parking lights on? A. Parking lights while I was parked, yes, sir.

"Q. And when you got ready to go, you got in your truck and pulled your other lights on? A. Yes, sir.

"Q. You told Corporal Martin that you got in your truck after you told those boys you didn't think you could help, you got in your truck and pulled your lights on, didn't you?

A. Yes.

\* \* \* \*

"Q. Now, at the Coroner's Inquest, you were asked this question: 'Do you know whether or not when you pulled your headlights on they were bright or dim?' 'That I do not recall because I didn't pay any attention to the position of the lights.' Do you remember saying that? A. Yes, sir."

\* \* \* \*

"Q. Now you were also asked this question: 'Did you or not think that your lights could have blinded the automobile coming over the hill at that point?' Don't you think it could? A. It's possible."

The appellant has grouped its exceptions into four questions, which we adopt as fairly presenting the legal issues involved in the appeal.

1. Was there sufficient evidence of negligence on the part of this defendant (the appellant) to have justified the trial Judge in submitting the case to the jury? 3. Was plaintiff's intestate as a matter of law, guilty of such contributory negligence, recklessness or willfullness as to bar any recovery? These two questions for convenience will be considered together.

The material facts are sharply disputed; the testimony is conflicting, as to the position of appellant's tractor-trailer with reference to the highway, whether or not its lights were on bright; the position of the deceased and the other pedestrians with reference to the center of the highway; the placing of flares in compliance with the statutory law of the State; the position of Mrs. Whitworth's car with reference to the center of the road.

It therefore follows, that the issues of actionable negligence, contributory negligence and proximate cause were questions for the jury's determination. The law is so well settled in this State that it is hardly necessary to cite authorities. However, we quote from a few of the decided cases.

"Jury has special prerogative to decide the facts, if evidence tends to sustain reasonable probability of manner or way relied on by plaintiff, even if injury complained of might have occurred in one of many ways." *Woodle v. Brown,* 223 S. C. 204, 74 S. E. (2d) 914, 915.

"To have authorized the trial Judge to hold as a matter of law that the plaintiff's cause of action was barred by contributory negligence, the testimony must have been susceptible of no other reasonable inference than that the injury and death of the intestate resulted from her negligence concurring with the actionable negligence of the defendant and contributing to the injury and death as a proximate cause thereof." *Marks v. I. M. Pearlstine & Sons,* 203 S. C. 318, 26 S. E. (2d) 835, 840.

It is firmly established in this jurisdiction that if the inferences, properly deducible from the evidence, are doubtful, or if they tend to show both parties guilty of negligence or willfullness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question must be submitted to the jury. *Ford v. Atlantic Coast Line Ry. Co.,* 169 S. C. 41, 168 S. E. 143.

In *Worrell v. South Carolina Power Co.,* 186 S. C. 306, 195 S. E. 638, 641, it is said:

" 'This court has held time and again that on a motion by a defendant for a directed verdict the testimony must be viewed in the light most favorable to the plaintiff, and if more than one inference can reasonably be drawn therefrom, then it is the duty of the trial judge to submit the case to the jury'."

" ' "And it has been decided that not only should questions of fact be submitted to the jury when they are in dispute, but also the matter is properly for the jury to pass upon when the question is as to inferences to be drawn from such facts after the facts have been determined." ' "

" 'The same rule of law is applicable on the question of contributory negligence. If more than one inference can reasonably be drawn from the testimony, viewing it most favorable to plaintiff, then it is the duty of the trial judge to submit this issue to the jury.' "

"It does not follow that, because it may appear from the testimony that an injury may have been caused in one of two or more ways, that the jury may not be allowed to determine in what way it was caused, if the facts and circumstances in evidence warrant a reasonable inference that it was caused in any way alleged in the complaint for which the defendant would be liable."

"If a plaintiff introduces evidence tending to show that a defendant was negligent, and the defendant introduces evidence tending to show that plaintiff was also negligent, even though plaintiff's injury may be in part traceable to the negligence of a third party, neither this court nor the circuit court is called upon to decide such issues when there is a conflict of evidence, and more than one inference can be drawn. Such issues must be decided by a jury, the tribunal setup under our form of jurisprudence to pass upon issues of fact in a court of law."

In the case of *Tobias v. Carolina Power & Light Co.,* 190 S. C. 181, 186, 2 S. E. (2d) 686, 688, the Court held:

"Liability for negligence is not predicated upon the necessity that the wrongdoer should foresee that an injury would result from his wrongdoing. It is sufficient that in view of all the attendant circumstances, he should have foreseen that his negligence would probably result in injury of some kind to some one." (Citing authority.)

In *Horne v. Southern Ry. Co.,* 186 S. C. 525, 197 S. E. 31, 37, 116 A. L. R. 745, the Court approved the following rule from *Washburn v. Laclede Gas Light Co.,* 202 Mo. App. 102, *loc. cit.* 115, 214 S. W. 410, *loc. cit.* 414:

" ' " "The liability of a person charged with negligence does not depend on the question whether with the exercise

of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.' " ' "

It, therefore, may be said from a resume of the authorities that to constitute negligence creating a liability for the damages to the respondent, it is not necessary that the appellant should have contemplated the particular event which occurred. It is enough that it should have contemplated the probable happening of some accident of this kind, involving bodily injury to others which ought to have been guarded against; and the doer of the act cannot shelter himself behind the defense that the actual consequence was one that rarely follows from that particular act. He may be held liable for anything which after the injury is complete appears to have been a natural and probable consequence of his act or omission.

The trial court committed no error in holding that there is sufficient evidence of negligence on the part of defendant-appellant to submit the case to the jury. There is ample evidence of negligence under existing circumstances on the part of appellant's driver, in pulling on his lights in the face of Mrs. Whitworth as she came over the crest of the hill, when he knew plaintiff's deceased and others were immediately behind him in the road. The evidence also shows lack of compliance with the law, in placing flares at and near appellant's parked tractor-trailer. Appellant's driver testified that he placed a flare, immediately after stopping, at the side of his vehicle. His testimony is contradicted by highway patrolman Martin and Mrs. Whitworth, which necessarily made an issue for the jury.

Still another issue for the jury on the question of actionable negligence was the conflicting testimony that a flare had been placed by appellant's driver on the opposite side of the road from his parked tractor-trailer. This may or may not have led to the confusion of Mrs. Whitworth and caused

her to drive too near the center line of the road or even to have crossed it.

The trial Court likewise committed no error in refusing defendant's motions on the ground that plaintiff's intestate was guilty of contributory negligence, recklessness or willfullness as a matter of law. Appellant contends that from blood spots near the center of the road, the plaintiff's deceased was on the west side (wrong side) of the road going southward. This contention is disputed by the direct evidence of Nichols and by the position of O'Briant's body, making an issue for the jury's determination along with the issue of proximate cause.

Question 2. Did the trial Judge err in failing to hold as a matter of law that deceased met his death as the result of an act on the part of an independent intervening person, which was not reasonably foreseeable by this Defendant?

" 'As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured.'

\* \* \* \*

" 'Where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any of the causes, and recovery may be had against either or all of the responsible persons, although one of them was more culpable, and the duty owed by them to the injured person was not the same.' " *Huggins v. Atlantic Coast Line Ry. Co.,* 158 S. C. 501, 155 S. E. 839, 840.

The appellant contends that even if its driver was guilty of negligent conduct, that such conduct was insulated as a matter of law by the independent and negligent acts of another (Mrs. Whitworth) in such a way that the negligent acts of the appellant did not contribute to the death of the deceased as a proximate cause thereof.

This question was before this Court in the recent case of *Ayers v. Atlantic Greyhound Corp.*, 208 S. C. 267, 37 S. E. (2d) 737, 741, wherein it was said:

"The intervening negligence of another will not excuse the first tort-feasor, if the intermediate wrong or a similar one * * * should have been foreseen in the exercise of due care; the original negligence remains active and constitutes a concurring proximate cause of the ultimate injury. * * * We repeat that it matters not that the supervening and concurrent cause was an act of negligence of a third person * * * or even a willful or criminal act.

\* \* \* \*

"If the injury complained of is a natural and probable consequence of a violation of the statute, then that violation is correctly taken as the proximate cause of the injury. If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the nonobservance of the law."

That there would be other traffic on the highway must have been foreseen by appellant's driver or by any reasonably prudent person under the circumstances; hence, the requisite law as to the placing of flares. Common prudence under the existing circumstances would have told a reasonably prudent person that to pull his lights on in the face of an approaching car, particularly when parked at an angle to the highway, was calculated to blind the driver, thereby endangering the lives not only of the occupants of both vehicles, but also the lives of the pedestrians he knew to be in the road immediately to his rear.

The test to be applied, to the factual situation is, would a reasonably prudent person, situated as appellant's driver was

in the circumstances, have foreseen the likelihood or probability of injury resulting to some one or after the injury resulted, it appears to have been a natural and probable sequence of his acts or omissions.

We are of the opinion that it was for the jury to say whether appellant's driver ought to have foreseen the injury and likelihood of resulting death and whether in the light of all the surrounding circumstances the death of plaintiff's deceased was a natural and probable sequence of his acts and omissions.

4. Did the trial Judge err in refusing to charge the jury that a proper interpretation of Section 46-436 of the 1952 S. C. Code would require a pedestrian to walk as near as practicable to the left side of the roadway?

The pertinent part of the statute provides:

"Where sidewalks are not provided any pedestrian walking along and upon a highway shall when practicable walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction."

Appellant requested the trial Court to interpolate or add thereto the following: "Pedestrians to walk as near as practical to the left edge of the roadway," which was refused. The statute was read to the jury by the Court. It is plain and understandable. For the Court to have charged appellants proposed addition would amount to the courts invading the province of the legislature as well as constituting a charge on the facts at issue. We are of the opinion that the trial Judge was eminently correct in so refusing.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.