18072

Carl W. POWELL, Respondent, v. Barney William SHORE and Charles Wesley Holder, Appellants

(131 S. E. (2d) 155)

*Messrs. Burroughs & Green,* of Conway, *for Appellants,*

*Messrs. Arrowsmith & Looper,* of Florence, *for Respondent,*

May 22, 1963.

BUSSEY, Justice.

This is an appeal from a judgment favorable to the plaintiff in an action for personal injuries sustained in an auto-

mobile collision. The collision occurred at a point about three miles east of Conway in Horry County, at a divided intersection of what is known as "old highway 501" and what is referred to in the testimony as "highway 501 bypass." The locale is not easy to grasp without the aid of photographs or plats. However, old highway 501 is a two lane roadway carrying two way traffic and runs from downtown Conway eastward in the direction of Myrtle Beach to the intersection of what is referred to as the "highway 501 bypass." What is referred to as the bypass is actually a four lane highway running from Myrtle Beach to the southern outskirts of Conway, and of course, a portion of it does bypass a portion of the town of Conway. At least in the vicinity of the divided intersection, the two eastbound lanes and the two westbound lanes of this highway are divided by a grass median.

Going east, as old highway 501 approaches the divided intersection, the right hand or eastbound lane thereof veers off to the right and crosses diagonally a westbound two lane roadway carrying traffic coming from Myrtle Beach; and beyond that point connects with the eastbound roadway of the bypass carrying traffic toward Myrtle Beach. Traffic coming from Myrtle Beach may either proceed straight ahead into Conway on old 501, or take a curve to the left on the two lane roadway carrying westbound traffic, back on to the bypass west of the divided intersection. The collision occurred in the intersection of this two lane westbound roadway and the east bound roadway carrying traffic from old 501 to the eastbound lanes of the bypass. The distance from the fork, where westbound traffic curves to the left, to the intersection where the collision occurred is approximately four hundred twenty-five feet.

Except for vehicles upon the highway, both eastbound and westbound traffic approaching the particular intersection have an unobstructed view for half a mile or more, the land being flat and level. At the intersection, there are traffic signs located on the eastbound roadway directing traffic to "yield right of way to traffic on left."

At the time of the collision the plaintiff, a resident of Effingham, South Carolina, thirty-two years of age, accompanied by his wife and two small children, was driving a 1948 Chevrolet sedan eastward toward Myrtle Beach. A new Oldsmobile convertible with its top down, owned and occupied by the defendant Holder and driven by the defendant Shore, aged twenty-four, was coming from Myrtle Beach traveling in a westerly direction. This car was occupied by the defendants and three other young men, all of whom were from the vicinity of Winston-Salem, North Carolina, had attended the races in Darlington, South Carolina on the previous day, spent the previous night in Myrtle Beach, and were en route home. The collision occurred at approximately 2:30 P. M., on a Sunday afternoon, May 15, 1960, the weather being clear. The impact between the vehicles occurred in the eastern portion of the intersection, the right front of the Oldsmobile striking the left-front wheel of the Chevrolet. Both vehicles were demolished and the plaintiff sustained substantial personal injuries. The foregoing facts are undisputed, but before proceeding to discuss the controverted facts, we shall state what we consider to be the principal question raised by the appeal.

The defendants made no motion for a nonsuit, but at the conclusion of the testimony they made the following motion:

"The defendants would move at this time for a directed verdict on the grounds that the only reasonable inference that can be drawn from all the testimony is that the collision resulting in injuries to the plaintiff was the result of his own acts of negligence and recklessness which was the sole proximate cause and at best contributed to the cause and he was guilty of contributory negligence."

It should be noted at this point that the defendants did not contend that the evidence was insufficient to go to the jury as to either negligence or willfulness on the part of the defendants, but sought a directed verdict on the contentions of sole proximate cause and contributory negligence or recklessness. The trial judge overruled this motion and also a mo-

tion for judgment *non obstante veredicto* made on substantially the same basis. The exceptions raise the issues of sole proximate cause and contributory negligence and recklessness, but in their brief defendants state and argue the question as being simply "Was the plaintiff guilty of contributory negligence and recklessness as a matter of law?"

Since no motion for a nonsuit or directed verdict was made on the ground that the evidence would not support an inference of willfulness on the part of the defendants, the defendants apparently concede that the evidence was sufficient to support such an inference, and in this we concur. Since contributory negligence is not a bar to recovery if there be willfulness on the part of the defendants, the issue here, therefore, is not whether the plaintiff is guilty of contributory negligence, but rather whether the plaintiff was guilty of contributory recklessness or willfulness as a matter of law, and we shall proceed to consider the evidence in the light of the restricted issue presented on appeal.

In considering the refusal of the trial judge to direct a verdict or grant a motion for judgment *non obstante veredicto,* it is, of course, the well-settled rule in this state that not only the evidence, but all reasonable inferences therefrom, must be taken most strongly against the appellants and considered in the light most favorable to the respondent. *Jumper v. Goodwin,* 239 S. C. 508, 123 S. E. (2d) 857.

Viewed in this light, the facts of the case, supported by the evidence are as follows. The plaintiff arrived at the intersection, protected by yield right of way signs, stopped, carefully looked both ways, and saw no vehicle or vehicles approaching him from any direction, except a wrecker pulling a disabled Plymouth automobile, which wrecker at the moment was entering or about to enter the curve of the westbound roadway, traveling at a reasonable rate of speed, the testimony as to speed varying from approximately twenty miles per hour to approximately forty miles per hour. At the moment of decision on the part of the plaintiff the

wrecker was some four hundred twenty-five feet away and plaintiff deemed the intersection sufficiently clear and safe to proceed to cross.

The roadways at the particular intersection cross each other somewhat diagonally, and there was a white line across the roadway traveled by the plaintiff, just west of the intersection, said line being some four feet from the actual intersection on plaintiff's right and some twenty-eight feet from the intersection on his left. The yield right of way signs were located some thirty-eight feet west of this white line. After plaintiff was in the actual intersection, the Oldsmobile automobile was observed by plaintiff and his wife approaching at a speed, estimated by them, of sixty miles per hour or more, traveling in its right hand lane of the westbound roadway. Skid marks showed that the Oldsmobile veered to its left into its left-hand lane and, as above mentioned, the point of impact between the vehicles was that the right front corner of the Oldsmobile struck the left front wheel of the Chevrolet on the side.

There was dispute as to the exact point of impact on the highway, but concededly, it happened in the left lane of the westbound roadway, and there is evidence that the actual point of impact was within two or three feet of the left edge of the left-hand lane of the westbound roadway. The Oldsmobile laid down skid marks of approximately forty-five feet before the point of impact, and there was evidence from which it could be inferred that it traveled some thirty-five feet after the impact, coming to rest on the grass on its left-hand side of the highway beyond the intersection. The Chevrolet by the force of the impact was knocked around and sideways some thirty-five or forty feet, and, as above stated, both cars were termed total losses.

The roadway traveled by the defendants was twenty-four feet in width, and since the roadways crossed diagonally, the plaintiff, of course, would have proceeded a greater distance than twenty-four feet in traversing the actual intersection. Considering the distances of the signs and the white line

from the actual intersection, under any view of the testimony, it is reasonable to infer that the plaintiff, after deciding to cross the intersection, traveled a distance of considerably more than twenty-four feet at a very slow rate of speed before being struck. The relatively higher speed of the Oldsmobile, under any view of the testimony, would give rise to the inference that, whether visible or not, it was quite a substantial distance away from the intersection when the plaintiff proceeded to cross.

The plaintiff and his witnesses account for his failure to see the Oldsmobile before entering the intersection by stating that it had to be behind the wrecker and Plymouth automobile on the off side of the curve when plaintiff stopped, looked and then decided to cross. The evidence on behalf of the defendants was to the effect that plaintiff did not stop; that the Oldsmobile was proceeding at a reasonable rate of speed and that it was in position where it was plainly visible when plaintiff proceeded into the intersection. Defendants do not contend that plaintiff was driving at excessive speed, their contention being that he was slowing down and that they thought he was going to stop, but that he did not. It is thus seen that the evidence as to speed and visibility of defendants' vehicle and the manner in which plaintiff entered the intersection is in sharp conflict.

It is firmly established in this jurisdiction that if inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence or willfulness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause then the question must be submitted to the jury. *Culbertson v. Johnson Motor Lines,* 226 S. C. 13, 83 S. E. (2d) 338. The determination of the question of contributory negligence or willfulness is controlled by the facts and circumstances of the particular case, and the court will not decide it as one of law if testimony is conflicting or if the inferences to be drawn therefrom are doubtful.

The real bone of contention on the part of the appellants is that the plaintiff was guilty of contributory willfulness, as a matter of law, in either failing to look, or, if he did look, in failing to observe the approach of the Oldsmobile automobile and yield the right of way. On this point we think that the evidence was conflicting and that more than one inference could be drawn therefrom.

Since even the locale here is difficult to describe without the aid of photographs or plats, we will not undertake to detail all of the testimony of the various witnesses tending to prove whether or not the plaintiff could have seen the Oldsmobile automobile when and as he proceeded to enter the intersection. Suffice it to say that after examination of all of the testimony and such exhibits as were tendered to the court, we conclude that there was ample support in the evidence, under all of the circumstances, for a finding by the jury that in point of fact, the plaintiff did look and under the circumstances was unable to see the approaching Oldsmobile automobile. It is not contended by the defendants that the wrecker was close enough to the intersection to constitute a hazard in the face of which plaintiff should not have entered, it being contended by the defendants that the wrecker was further away from the intersection than shown by the evidence in behalf of the plaintiff.

Moreover, we think there was room under the evidence for the jury to have concluded, under all of the circumstances, that even if plaintiff failed to exercise due care, any such failure on his part was mere inadvertence or simple negligence. Under these circumstances, we cannot hold as a matter of law that the plaintiff here was guilty of contributory willfulness and thereby barred from recovery.

The only other question raised by the appeal deals with the admission of evidence. The business manager of the hospital where plaintiff was hospitalized was allowed to testify as to the amount of his hospital bills, he testifying, without objection, from an original record. Counsel for appellants then moved the introduction of the

record itself, and the trial judge, after hearing arguments in the absence of the jury, excluded it because there was contained thereon some notations about insurance payments. We think the trial judge correctly exercised his discretion in this respect, and moreover, there is no showing of any prejudice by the appellants since they do not contend that the amounts testified to by the witness were incorrect, or that the verdict here was in any sense unduly liberal or excessive.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.